[Civ. No. 38211. First Dist., Div. One. Dec. 21, 1976.]

PALO ALTO-MENLO PARK YELLOW CAB COMPANY, INC.,
et al., Plaintiffs and Appellants, v.
SANTA CLARA COUNTY TRANSIT DISTRICT et al.,
Defendants and Respondents.

122

124

### COUNSEL

Anastasi & Vogel, Anthony J. Anastasi and Phillip J. Nielsen for Plaintiffs and Appellants.

William M. Siegel, County Counsel, and Gerald J. Thompson, Assistant County Counsel, for Defendants and Respondents.

### OPINION

WEINBERGER, J.*—Appellants Palo Alto-Menlo Park Yellow Cab Co., Inc. and Cabs Unlimited, Inc. (doing business as Yellow Cab of Mt.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

View, Los Altos and Cupertino) and other owners and operators of taxicab companies operating in Santa Clara County, on November 18, 1974, filed a complaint in the superior court for injunctive and declaratory relief.

The complaint alleged violation of the Santa Clara County Transit District Act (Pub. Util. Code, § 100000 et seq.) and sought to enjoin the operation of the Dial-A-Ride service proposed by Santa Clara County Transit District, et al. (hereinafter respondents), unless and until respondents purchased plaintiffs' businesses in accordance with Public Utilities Code section 100055.1.[1] The complaint further sought declaration that plaintiffs are "existing systems" within the meaning of Public Utilities Code section 100021,[2] and that respondents are therefore required to purchase plaintiffs' businesses before beginning operation of the Dial-A-Ride system, which was scheduled to and did begin operation on November 24, 1974.

At a hearing on an order to show cause why a preliminary injunction should not be granted the parties, on January 9, 1975, stipulated in open court (1) that the matter had been fully heard on the merits both as to law and to facts; (2) that plaintiffs were "existing systems" within the meaning of Public Utilities Code section 100021; (3) that respondents had diverted, lessened and competed for the patronage of plaintiffs' businesses; (4) that respondents failed to purchase plaintiffs' businesses before beginning their Dial-A-Ride operation in violation of California Public Utilities Code section 100055.1; (5) that respondents be allowed a period of time ending January 24, 1975, to decide whether to terminate the Dial-A-Ride system or to enter negotiations for the purchase of plaintiffs' businesses; and (6) that the trial court would retain jurisdiction to insure prompt follow-up of negotiations. The court granted an interlocutory decree in conformity with the stipulation and directed appellants' counsel to prepare the necessary order. A document entitled "Interlocutory Judgment on Complaint for Injunction and Declaratory

[1]Public Utilities Code section 100055.1 provides: "The district shall not establish the proposed service or system, or maintain and operate the service or system until it has completed the purchase of the existing system or any part thereof."

[2]Public Utilities Code section 100021 provides: " 'Existing system' means any transit service or system of a publicly or privately owned public utility or division thereof operating entirely within Santa Clara County or at least 40 percent of whose revenue vehicle miles for the preceding calendar year were operated within the district but does not include a charter-party carrier or the charter service of a passenger stage corporation."

Relief" was signed and filed on January 17, 1975, wherein it was ordered that respondents should permanently stop all operations of the Dial-A-Ride system on or before January 24, 1975, unless, on or before that date, respondents delivered to plaintiffs a written notice of respondents' willingness to immediately enter into negotiations for the purchase of each of plaintiffs' systems. The judgment further provided that respondents could continue the operation of their Dial-A-Ride system if they elected, within the time prescribed, to purchase plaintiffs' systems and actually pursued good faith negotiations for the purchase of plaintiffs' systems.

Respondents notified appellants on January 21, 1975, of their election to enter into negotiations for the purchase of appellants' businesses pursuant to court order. On May 9, 1975, respondents unilaterally and voluntarily terminated the Dial-A-Ride system in the north, east, and west zones of Santa Clara County without having completed negotiations to purchase appellants' businesses, and on June 4, 1975, filed a motion in the trial court for an order stating that respondents, by reason of having terminated Dial-A-Ride services in areas served by appellants, were not required to purchase appellants' taxicab companies, and for an order that appellants had an adequate remedy at law for any damages they may have sustained.

After a hearing which concluded on June 20, 1975, the trial court announced its decision to grant the respondents' motions and on July 25, 1975, a document entitled "Judgment" was signed and filed directing that, among other things, (1) "The motion of the Santa Clara County Transit District to modify the Judgment of this Court made on January 9, 1975, to show the remedy to be applied is one of damages, not injunctive relief, is hereby granted by reason of the termination of its Dial-A-Ride personalized service on May 9, 1975"; (2) that the defendants are "relieved of that injunctive portion of the Judgment made on January 9, 1975, and that the remedy will be that of damages"; (3) "That damages are ascertainable and afford plaintiffs an adequate remedy at law for the diversion, lessening and competing for the patronage and revenues of plaintiffs' existing systems by the defendants"; (4) that defendants "are not required to purchase the plaintiff taxicab companies"; and (5) "That the Superior Court, under its retained jurisdiction, shall supervise the remedy of damages which the Court has found to be the proper remedy to be applied."

This appeal is from the "judgment" modifying, in part, the prior "interlocutory judgment" of January 9, 1975.

Appellants first contend that the interlocutory judgment of January 9, 1975, regardless of its label, became final and not subject to modification or collateral attack when the time for appeal expired on March 9, 1975. They urge that the trial court, having retained jurisdiction only to insure prompt follow-up of negotiations, exceeded its jurisdiction when it issued the "judgment" of July 25, 1975, purporting to modify the interlocutory judgment.

■ Where a judgment is truly interlocutory, it is not a final and conclusive determination of the rights of the parties, and may be changed or modified by the trial court as the law or evidence requires until rendition of a final judgment. (*Solorza* v. *Park Water Co.* (1949) 94 Cal.App.2d 818, 821 [211 P.2d 891].) It is also well settled that the mere denomination of a judgment as "interlocutory" is not determinative of its finality. (*Brown* v. *Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 453 [322 P.2d 600, 72 A.L.R.2d 997]; *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 669 [123 P.2d 11].) In determining whether a judgment is final or merely interlocutory the rule is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties the judgment is interlocutory only; but where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, the decree is final. (*Zappettini* v. *Buckles* (1914) 167 Cal. 27, 33 [138 P. 696].) This general test must be adapted to the particular circumstances of the individual case. (*Lyon* v. *Goss, supra,* at p. 670.)

■ In the instant case the judgment of January 9 was a final determination of the substantive rights of the parties despite its denomination as interlocutory. The parties stipulated that the matter had been fully heard on its merits, both as to law and to fact, and that no further trial was needed on the issues raised by the pleadings. They further stipulated that respondents were in violation of section 100055.1 of the Public Utilities Code, and therefore must decide within two weeks whether to terminate the Dial-A-Ride system, or to negotiate to purchase appellants' businesses and that the court would retain jurisdiction to insure prompt follow-up of negotiations.

130

■ Despite our holding that the judgment entered pursuant to these stipulations was a final judgment, it was nevertheless modifiable as to remedy. ■ A court of equity has inherent power to modify an injunction in adaptation to changed conditions. "When it can be shown that circumstances have so changed that an injunction is no longer necessary or desirable, the trial court has power to amend it in the interest of providing justice for all parties in interest. 'The court's power in this respect is an inherent one.' [Citation.]" (*Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 604 [342 P.2d 249].)

In *Sontag Chain Stores Co.* v. *Superior Court* (1941) 18 Cal.2d 92, 95 [113 P.2d 689], it was held that a trial court has inherent power, upon motion, to modify or vacate a permanent preventive injunction upon a showing that the ends of justice will be served or that there has been a change in controlling facts upon which the injunction rests. The Supreme Court recognized the long established policy of the law to accord finality to judgments, but held this rule to be inapplicable to a decree granting injunctive relief, stating, "This is so because the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference." (*Id.,* at p. 94; see also *Union Interchange, Inc.* v. *Savage, supra,* 52 Cal.2d 601 at p. 604 [similar power to modify preliminary preventive injunction upon a showing of changed circumstances]; *Brunzell Constr. Co.* v. *Harrah's Club* (1967) 253 Cal.App.2d 764, 772 [62 Cal.Rptr. 505] [similar power to grant injunction previously denied upon a showing of changed conditions].) ■ "When the decree is continuing in nature, directed at future events, it must be subject to adaptation as events may shape the need." (*Union Interchange, Inc.* v. *Savage, supra.*) As is stated in 4 Witkin, California Procedure (2d ed. 1971) Judgment, section 78, page 3239: "Independent of statute, a court which renders an equitable decree may appropriately reserve jurisdiction to take steps to carry it into effect, and, to that end, may make changes in procedural provisions. [Citations.] [¶] The jurisdiction reserved is to modify procedural provisions, not to materially change the adjudication of substantial issues." ■ This is exactly what the trial court did in the instant case. The substantial issues decided in the declaratory relief judgment of January 9th, signed and filed on January 17, 1975, could not be, and were not, modified by the judgment of July 25, 1975. The procedural portion of the judgment, a permanent injunction against continued operation of Dial-A-Ride or the commencement of good faith negotiations for the purchase of appellants'

taxicab companies, was modified in the light of changed circumstances. Termination of the Dial-A-Ride system by the respondents made injunctive relief unnecessary because damages were then ascertainable. Thus the trial court, under its retained jurisdiction, agreed to "supervise the remedy of damages which the Court has found to be the proper remedy to be applied." We find no error in this ruling.

■ Appellants next contend that the remedy of a mandatory buy-out is required for violation of Public Utilities Code section 100055.1, and that the trial court therefore lacked jurisdiction to relieve respondents of their obligation to purchase appellants' businesses. Section 100055.1 provides only that the transit district shall not establish, maintain or operate a competing transit system until it has completed the purchase of existing systems. The section is silent as to what remedy is to be applied where the transit district, in violation of the act, begins a competitive service without first buying out existing systems. The section is likewise silent as to the proper remedy where the transit district terminates a competing system before completing purchase of existing systems. Thus the Santa Clara County Transit District Act (Pub. Util. Code, § 100000 et seq.) does not, as appellants contend, mandate a buy-out under the particular facts of this case.

■ The violation of a statute gives to any person within the statute's protection a right of action to recover damages caused by its violation. (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 1001 [103 Cal.Rptr. 498].) Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided (*County of Monterey* v. *Abbott* (1888) 77 Cal. 541, 543 [18 P. 113, 20 P. 73]); otherwise any appropriate common law remedy may be resorted to. (*Roberts* v. *Landecker* (1858) 9 Cal. 262, 267; Civ. Code, § 1428.) Where a right is given by statute it may be enforced by any appropriate method, legal or equitable. (See *Paxton* v. *Paxton* (1907) 150 Cal. 667, 670-671 [89 P. 1083].)

The modification ordered by the trial court in the instant case is consistent with the general rules governing equitable relief. ■ It is generally recognized that a party who has an adequate remedy at law may not resort to a court of equity for injunctive relief. (*Teeter* v. *Los Angeles* (1930) 209 Cal. 685, 687 [290 P. 11]; *North Side etc. Assn.* v. *Hillside etc. Park* (1945) 70 Cal.App.2d 609, 615 [161 P.2d 618]; *Helms Bakeries* v. *St. Bd. Equalization* (1942) 53 Cal.App.2d 417, 421 [128 P.2d

167].) Injunctive relief will be denied where the defendant voluntarily discontinues the wrongful conduct. "Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur." (*Mallon* v. *City of Long Beach* (1958) 164 Cal.App.2d 178, 190 [330 P.2d 423].)

Appellants contend that, by modifying the earlier judgment in the instant case, the trial court has, in effect, rewarded respondents for their wrongful conduct. However, if respondents are required to pay for all damages proximately caused by their misconduct, a procedure which the trial court has undertaken to supervise, the appellants have failed to demonstrate in what manner respondents will have profited from their wrongdoing.

Appellants argue that the trial court committed reversible error in holding that damages were an adequate remedy for injuries incurred by appellants as a result of respondents' unauthorized competition. Appellants assert that the district's operation of a Dial-A-Ride system made residents of Santa Clara County "bus conscious," and that, as a result, taxicab companies now have fewer riders. Thus, they conclude, they have incurred irreparable and unascertainable injuries necessitating mandatory buy-out of their businesses.

■ An injunction is properly granted where it would be extremely difficult or impossible to ascertain the amount of compensation which would afford adequate relief. (*Anderson* v. *Souza* (1952) 38 Cal.2d 825, 834 [243 P.2d 497]; Civ. Code, § 3422, subd. 2.) Injunctive relief rests in the sound discretion of the court (*Merced Mining Co.* v. *Fremont* (1857) 7 Cal. 317, 327-328), to be exercised in accordance with well settled equitable principles and in light of all the facts and circumstances in the case. "In an equity case the trial court 'has broad and flexible discretionary powers, and can, and undoubtedly would, deny injunctive relief where such relief would be inequitable'." (*Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 662 [82 P.2d 3, 118 A.L.R. 486].)

■ In the present case the trial court reasoned that, while there may be some difficulty in ascertaining damages, they nevertheless are ascertainable. The court based its conclusion on the fact that the unauthorized competition here in issue was for a fixed period of time, amounting to less than six months, and that damage claims filed by appellants for loss of revenue for the period of November 24, 1974,

through February 23, 1975, evidenced an ability to ascertain damages for loss of revenue to a very exact amount. We can perceive no reason why it will be more difficult to place a dollar value on the loss (past, present and future) proximately caused by respondents' violation of Public Utilities Code section 100055.1 for a fixed period of time, than to set the purchase price to be paid for the existing systems if the parties failed to agree on that price.

■ Appellants contend that the trial court committed error in failing to find that respondents were bound to purchase appellants' businesses under the doctrine of promissory estoppel. At the county's request appellants remained in business during the period of negotiations, despite the claim that they were operating at a loss, in order to assure the public of transportation facilities pending purchase of the companies by the county. In addition, appellants declined to enter into new contracts and agreements because they had been advised that the county would not honor any new obligations incurred by the taxicab companies. These are matters to be considered in determining appellants' loss and will no doubt receive the trial court's attention, but the doctrine of promissory estoppel is not involved. The appellants, in their pleadings, asked for declaratory and injunctive relief, which the stipulated judgment gave them. There was no claim, nor could there have been, that the appellants and the transit district had entered into a contract for which specific performance could be decreed. Specific performance, which appellants seek here, will be granted only when the legal remedy, such as an action for damages, is inadequate. (*Morrison* v. *Land* (1915) 169 Cal. 580, 588 [147 P. 259]; see 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 21, pp. 5246-5247.) Appellants' contention that injustice can be avoided only by mandatory buy-out of their businesses is not persuasive. The trial court found that, because of termination of the Dial-A-Ride service, damages are now ascertainable as to appellants, and accordingly concluded that the proper remedy was damages and not injunctive relief. This is consistent with the general rule that injunctive relief will be denied where legal remedies are adequate. (*Teeter* v. *Los Angeles, supra,* 209 Cal. 685 at p. 687.)

■ The purpose of promissory estoppel is to make a promise binding under certain circumstances without consideration in the usual sense of something bargained for and given in exchange. "[W]here the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room

for application of the doctrine of promissory estoppel." (*Healy* v. *Brewster* (1963) 59 Cal.2d 455, 463 [30 Cal.Rptr. 129, 380 P.2d 817]; see *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249-250 [74 Cal.Rptr. 398, 449 P.2d 462].) Thus, promissory estoppel may furnish consideration in certain cases where otherwise the defense of lack of consideration might prevail. It cannot create a contract where, as here, the promisor is given the alternative of discontinuing its Dial-A-Ride procedure or promising to enter into good faith negotiations for the purchase of appellants' businesses, and elects to pursue the latter course. Under the doctrine of promissory estoppel, a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement. (*Youngman* v. *Nevada Irrigation Dist., supra,* at p. 249.) Here the trial court concluded, on what we consider to be reasonable grounds, that injustice to appellants can be avoided by an adequate award of damages, a procedure the court has reserved jurisdiction to supervise.

Finally appellants argue that respondents, having elected to pursue negotiations pursuant to the January 9 judgment, were bound to purchase appellants' businesses under the doctrine of election of remedies. This doctrine is not applicable in the present case. ■■■ "The basis of the doctrine of election is founded upon the theory that a party should not be allowed to occupy inconsistent positions, and upon the proposition that where there is by law or by contract a choice between two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar prosecution of the other." (*McDanels* v. *General Ins. Co.* (1934) 1 Cal.App.2d 454, 461 [36 P.2d 829].)

■■■ Respondents did not, in the present case, assume inconsistent legal positions by first negotiating for the purchase of appellants' businesses, and then discontinuing negotiations and terminating the Dial-A-Ride system. By the express terms of the judgment the respondents were required to acknowledge that operation of the system without purchase of appellants' businesses was a violation of Public Utilities Code section 100055.1. They were given the option to discontinue their Dial-A-Ride operation or to negotiate for purchase of appellants' businesses. Ultimately, albeit not within the time period set by the judgment, the respondents discontinued the Dial-A-Ride operation and thereby caused appellants additional damage. The course the transit

district ultimately chose was entirely consistent with one of the alternatives directed by the judgment, both of which were based upon but a single claim of right. The respondents are no longer competing with appellants; the appellants have at all times continued their operations and are entitled under the court's direction to recover all damages they are able to establish as having been proximately caused by respondents' violation of law.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.