75 Cal.Rptr.2d 766 (1998)
64 Cal.App.4th 580
ESTATE OF Louella STARKWEATHER, Deceased.
S. Kimberly BELSHÉ, as Director, etc., Petitioner and Respondent,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Objector and Appellant.
S. Kimberly BELSHÉ, as Director, etc. Plaintiff and Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant and Respondent.
Nos. A078754, A078996.
Court of Appeal, First District, Division Two.
June 5, 1998.
*768 Arthur A. Park, Lisa R. McLean, Ottenweller, Solan & Park, LLP, San Francisco, for United States Fidelity and Guaranty Company.
Daniel E. Lungren, Attorney General, Charlton G. Holland, III, Senior Assistant Attorney General, for Kimberly Belshe, Director, Department of Health Services.
KLINE, Presiding Justice.
The appeals in these consolidated cases present the question of what remedy is available to the Director of the Department of Health Services (Department) when the personal representative of a decedent's estate falsely represents to the probate court that the decedent did not receive Medi-Cal benefits and notice to the Department is not required, thereby depriving the Department of its opportunity to file a claim against the estate. The Department contends it is entitled to recover from the personal representative or the surety that posted the bond guaranteeing her faithful performance of her duties to the estate, as her perpetration of extrinsic fraud upon the court constituted a failure to faithfully discharge her duties. The surety maintains the Department is limited to a statutorily provided remedy of recovery from the distributees of the estate. The two trial courts below reached conflicting results. In Estate of Starkweather, Superior Court of Alameda County, 1997, No. 2452661 (A078754), the Alameda County trial court granted the Department's petition to set aside the final accounting and distribution of the estate and surcharge the personal representative, and the surety appeals. In Belshe v. United States Fidelity & Guaranty Company, Superior Court of Contra Costa County, 1997, No. C96-03500 (A078996), the Contra Costa County trial court dismissed the Department's action to enforce its claim and recover on the personal representative's bond, and the Department appealed. We conclude the Alameda court's decision was correct, affirm that judgment and reverse the judgment of the Contra Costa court.[1]

STATEMENT OF THE CASE AND FACTS
In 1994, Darlene Phillips was appointed the personal representative of the estate of Louella Starkweather in a probate proceeding in Alameda County. Phillips caused to be filed a qualifying bond in the amount of $160,000, with United States Fidelity & Guaranty Company (Fidelity) as surety, guaranteeing her faithful execution of her duties as administrator of the estate.
On April 6, 1995, Phillips filed her First and Final Account and Report of Administrator and Petition for Settlement, Allowance of Fees and Distribution. Phillips stated, *769 among other things, that the decedent had not received Medi-Cal and, therefore, notice to the Department under Probate Code section 9202 was not required. The total value of the estate, as received by Phillips from the decedent's conservator, was reported to be $145,528.21. On May 12, 1995, the court entered its Order Settling the Final Account, ordering that the estate (then consisting of approximately $116,300 cash) be distributed in equal shares to Phillips and her brother, the decedent's grandchildren.
On September 12, 1996, the Department filed in the Contra Costa Superior Court a first amended complaint to enforce a Medi-Cal creditor's claim and recover on the probate guaranty bond. The complaint alleged the Department was entitled under Welfare and Institutions Code section 14009.5 to reimbursement for Medi-Cal benefits received by certain decedents; the personal representative or estate attorney was required by Probate Code sections 9201 and 9202 to provide notice of the decedent's death to the Department if the personal representative knew or had reason to believe the decedent had received Medi-Cal benefits; Louella Starkweather received Medi-Cal benefits of $137,997.48 between approximately May 2, 1974, and April 30, 1992; Phillips was appointed personal representative and caused to be filed a $160,000 bond; Phillips knew or had reason to know Louella Starkweather had received Medi-Cal benefits but did not give the Department notice of the decedent's death, resulting in the Department's failure to file a claim in the probate proceeding and receive payment as required by law; the estate had been distributed, with Phillips receiving one-half the value of approximately $145,528.21; and the Department was entitled to repayment from Phillips and Fidelity, as surety, of $137,997.48, plus interest, based on Phillips' failure to faithfully execute the duties of her office and was entitled to repayment from Phillips as a distributee of an amount equal to her distribution, plus interest.[2]
Fidelity filed a demurrer, arguing the Department's sole remedy was a claim against the distributees of the estate under Probate Code section 9203. The demurrer was sustained with leave to amend, and on January 31, 1997, the Department filed its second amended complaint. This complaint added allegations that Phillips had fraudulently and falsely represented to the probate court that the decedent had not received Medi-Cal benefits and notice to the Department was not required, in order to keep the Department in ignorance of the proceedings and deceive the court into distributing the estate to Phillips and her brother without notice to the Department. The Department sought repayment from Phillips and Fidelity of $137,997.48 based on Phillips's failure to faithfully execute her duties as personal representative, and repayment from Phillips, as distributee of the estate, of her share of the distribution plus interest.[3]
Fidelity again demurred, urging the Department was limited to a claim against the distributees even with allegations of fraud by the personal representative.[4] The trial court sustained the demurrer without leave to amend, agreeing with Fidelity that "Probate Code section 9205 does not sanction recovery by the Department of Health Services *770 against Darlene Phillips as administrator of the decedent's estate on the ground of fraud. Rather plaintiffs' remedy is limited to recovery from the distributees pursuant to Probate Code section 9203(b)." The court's order of dismissal was filed on May 12,1997. The Department filed a timely notice of appeal on June 26,1997.
Meanwhile, in October 1996, the Depart. ment had filed in Alameda County Superior Court a petition to surcharge the personal representative and vacate the order of final account and distribution. As in the Contra Costa County action, the petition alleged the Department's entitlement to reimbursement under Welfare and Institutions Code section 14009.5; the requirement of notice to the Department imposed by Probate Code sections 9201 and 9202; and the receipt by Louella Starkweather of Medi-Cal benefits of $137,997.48 between approximately May 2, 1974, and March 1992. The petition alleged Phillips knew or had reason to know Louella Starkweather had received Medi-Cal benefits, yet informed the probate court notice to the Department was not required because the decedent had not received such benefits; [5] Phillips never gave notice of the decedent's death to the Department during the administration of the estate and had she done so, the Department would have filed a claim for $137,997.48, which Phillips would have paid pursuant to Welfare and Institutions Code section 14009.5 or the Department would have been able to enforce through an independent action against Phillips before the final accounting and order of distribution; the May 1995 order distributing the estate was obtained by Phillips' false representation that the decedent had not received Medi-Cal benefits; that because it was not given notice, the Department was unaware of the probate proceeding and therefore unable to participate in it; and Phillips remained subject to the jurisdiction of the court and surcharge for her failure to carry out her statutory duties as administrator because she had not been discharged from her position as personal representative.
The Department also filed the declaration of its collection representative, Keith Parsley. According to this declaration, the Department was notified by the Public Guardian of Alameda County, in a letter dated December 8, 1994, that Louella Starkweather had died. This letter indicated the probate or "case reference" number was H-18608-9. On March 8, 1995, Parsley filed a creditor's claim for $137,997.48 in Alameda County Superior Court number H-18608-9. Parsley subsequently learnedafter the estate had been distributedthat H-18608-9 was the number of the conservatorship proceeding rather than the probate proceeding.
Fidelity opposed the Department's petition, arguing Probate Code section 9203 limited the Department's remedy to making a claim against the distributees of the estate, to the exclusion of equitable remedies for extrinsic fraud.
On April 18, 1997, the Alameda County trial court filed its judgment setting aside the final accounting and distribution and surcharging the personal representative. The court found Phillips knew at the time of her appointment as personal representative that the decedent had received care and treatment reimbursed by the Medi-Cal program; the Department had a valid claim against the state for $137,997.48; Phillips did not notify the Department of the decedent's death but willfully represented in the petition for first and final account and request for final distribution that the decedent had not received Medi-Cal benefits, with the intent to mislead the court into approving the final account and ordering a distribution without requiring Phillips to discharge the Department's claim; and that Phillips had not been discharged as personal representative, having not filed the receipts of distribution as ordered by the court. The court concluded Phillips breached her fiduciary duty towards the estate and was under an obligation to recover for the estate the corpus of the estate in the amount of $137,997.48 to discharge the valid claim of the Department, and therefore it surcharged Phillips in this amount for her failure to *771 faithfully carry out her duties. The court set aside the order of final distribution and awarded the Department $137,997.48 against Phillips in her capacity as personal representative of the estate. Fidelity filed a timely notice of appeal on May 27,1997.

DISCUSSION
Welfare and Institutions Code section 14009.5 provides, in pertinent part: "(a) Notwithstanding any other provision of this chapter, the department shall claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival in an amount equal to the payments for the health care services received or the value of the property received by any recipient from the decedent by distribution or survival, whichever is less."[6]
Chapter 5 of Part 4 of the Probate Code, "Claims by Public Entities," consists of sections 9200 through 9205. Probate Code section 9201 provides in pertinent part: "(a) Notwithstanding any other statute, if a claim of a public entity arises under a law, act, or code listed in subdivision (b): ... (2) The claim is barred only after written notice or request to the public entity and expiration of the period provided in the applicable section. If no written notice or request is made, the claim is enforceable by the remedies, and is barred at the time, otherwise provided in the law, act or code." Subdivision (b) of this statute lists 12 laws, including the Medi-Cal Act, and specifies the "applicable section" for the Medi-Cal Act as section 9202 of the Probate Code.
Section 9202 of the Probate Code provides: "Not later than 90 days after the date letters are first issued to a general personal representative, the general personal representative or estate attorney shall give the Director of Health Services notice of the decedent's death in the manner provided in Section 215 if the general personal representative knows or has reason to believe that the decedent received health care under Chapter 7 (commencing with Section 14000) or Chapter 8 (commencing with Section 14200) of Part 3 of Division 9 of the Welfare and Institutions Code, or was the surviving spouse of a person who received that health care. The director has four months after notice is given in which to file a claim."
Probate Code section 9203 provides in pertinent part: "(a) Failure of a person to give the written notice or request required by this chapter does not affect the validity of any proceeding under this code concerning the administration of the decedent's estate. [¶] (b) if property in the estate is distributed before expiration of the time allowed a public entity to file a claim, the public entity has a claim against the distributees to the full extent of the public entity's claim, or each distributee's share of the distributed property, whichever is less. The public entity's claim against distributees includes interest at a rate equal to that specified in Section 19269 of the Revenue and Taxation Code, from the date of distribution or the date of filing the claim by the public entity, whichever is later, plus other accruing costs as in the case of enforcement of a money judgment." (Emphasis added.)
Fidelity takes the position that the italicized language in Probate Code section 9203, subdivision (b), provides the exclusive remedy available to the Department in a situation where it has not been given notice as required by Probate Code section 9202, even when the failure to give notice amounts to extrinsic fraud. Its position is relatively straightforward. Probate Code section 9203, subdivision (b), expressly posits the circumstance of a failure to give notice and establishes a remedy. Where a statute creates a new right and provides a remedy, that remedy is exclusive. (Faria v. San Jacinto Unified School Dist. (1996) 50 Cal.App.4th 1939, 1947, 59 Cal.Rptr.2d 72; Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist. (1976) 65 Cal.App.3d 121, 131, 135 Cal.Rptr. 192.) Statutory provisions imposing liability on the personal representative *772 for bad faith failure to give notice to other types of creditors, coupled with the absence of such provisions for creditors in the Department's position, indicate the Legislature did not intend to allow the Department resort to an action against the personal representative in a case such as this. (Prob. Code, § 9053.) Finally, the Department is not entitled to assert a claim based on the doctrine of extrinsic fraud because of the existence of the statutory remedy, equitable relief being unavailable where there is an adequate remedy at law. (Martin v. County of Los Angeles (1996) 51 Cal.App.4th 688, 696,59 Cal.Rptr.2d 303.)
The Department, by contrast, maintains the statutory scheme does not preclude an action against the personal representative for fraud; the statutory remedy against the distributees is inadequate, as Phillips has declared bankruptcy; and it is entitled to recover from Fidelity on the bond guaranteeing the discharge of duties Phillips breached by her fraud. Although we are unpersuaded by several of the Department's specific arguments, we will conclude the Department's remedy on the facts of this case is not limited to that specified in Probate Code section 9203, subdivision (b).
With respect to the statutory scheme, the Department argues that where a Chapter 5 public entity is not provided notice, it is specifically authorized to rely upon generally available remediessuch as an action for extrinsic fraudby Probate Code section 9201, subdivision (a)(2). The Department misreads this statute. As quoted above, Probate Code section 9201, subdivision (a)(2), provides that if the claim of a public entity "arises under a law, act or code" listed in subdivision (b), the claim is barred "only after written notice or request to the public entity and expiration of the period provided in the applicable section." The statute then states, "If no written notice or request is made, the claim is enforceable by the remedies, and is barred at the time, otherwise provided in the law, act, or code." (Emphasis added.) Contrary to the Department's interpretation, by the plain language of the statute the other remedies authorized by Probate Code section 9201, subdivision (a)(2), are not any remedies, but only such remedies as may exist "in the law, act or code" making the public entity subject to section 9201. In the present case, the relevant law is the Medi-Cal Act, Welfare and Institutions Code section 14000 et seq. The Department does not suggest any provision of the Medi-Cal Act authorizes an action for extrinsic fraud in failing to give notice under Probate Code sections 9201 and 9202. The language of section 9201, subdivision (a)(2), does not suggest all remedies available under the common law are applicable in case of a failure to give notice.
The Department attempts to bolster its interpretation by reference to Probate Code section 9205, the last provision in Chapter 5. Probate Code section 9205 provides: "This chapter does not apply to liability for the restitution of amounts illegally acquired through the means of a fraudulent, false, or incorrect representation, or a forged or unauthorized endorsement." According to the Department, it is in the present case seeking "restitution" of the proceeds of the estate wrongfully obtained by Phillips "through the means of a fraudulent, false, or incorrect representation." The Department views Probate Code section 9205 as exempting its action from any provision of chapter 5 that might be read to preclude such actions.
Fidelity urges Probate Code section 9205 deals not with fraud in the course of a probate proceeding, such as involved here, but with fraud in obtaining or providing benefits. For example, Welfare and Institutions Code section 14014 provides that a person who receives health care for which he or she was not eligible on the basis of false declarations, or who makes false representations on behalf of another person who is not eligible, is liable for repayment and guilty of a misdemeanor or felony (depending on the amount paid). Welfare and Institutions Code section 10980 establishes criminal penalties, including incarceration and fines, for conduct such as willfully and knowingly, with intent to deceive, making false representations or material omissions, in attempting to obtain welfare benefits, using a false or fictitious identity in applying for benefits, and obtaining benefits by means of false representations *773 or other fraudulent devices. When a person is convicted of welfare fraud, the government is a "victim" entitled to restitution. (People v. Crow (1993) 6 Cal.4th 952, 957, 26 Cal.Rptr.2d 1, 864 P.2d 80; Pen.Code, § 1202.4, subd. (k).)
Fidelity's interpretation is the more tenable. The phrase "restitution of amounts illegally acquired" in Probate Code section 9205 suggests reference to restitution under statutes such as those just described. Probate Code section 9200 provides that "[e]xcept as provided in this chapter, a claim by a public entity shall be filed within the time otherwise provided in this part" and claims not so filed are barred. Probate Code section 9201, as we have discussed, establishes that claims of a public entity arising under 12 enumerated laws, acts or codes are barred only after written notice or request to the public entity and expiration of the period provided in the applicable section. A review of each of the laws and "applicable section[s]" listed in Probate Code section 9201 reveals that each involves a public entity's claim for deficiencies arising during the lifetime of a decedent,[7] for contributions, penalties and interest based on wages paid by a deceased "employing unit"[8] or for repayment of costs associated with care of the decedent during his or her lifetime.[9] Thus, under Probate Code sections 9200 and 9201, only specific types of claims by enumerated public entities are subject to the provisions of Chapter 5. Probate Code section 9205 simply clarifies that the provisions of Chapter 5 do not apply to claims by these public entities for amounts fraudulently obtained by the decedent.
The Department also contends the remedy stated in subdivision (b) of Probate Code section 9203 applies only if notice is given to the public entity but the estate is distributed before the public entity files its claim. Clearly, Probate Code section 9203, subdivision (b), applies in this situation. We see no basis, however, for finding the statute applies only in cases where notice has been given. Under the statutes at issue, a claim by the Department is not barred unless the Department has been given written notice. (Prob.Code, §§ 9201, subd. (a)(2).) When a personal representative fails to give notice, therefore, the time for the Department to file its claim does not expire. It follows that an estate distributed without notice having been given to the Department has necessarily been distributed "before expiration of the time allowed a public entity to file a claim." (Prob.Code, § 9203, subd. (b).) Consequently, Probate Code section 9203, subdivision (b), generally prescribes the remedy for the Department in the event an estate is distributed without notice to the Department.
Despite our rejection of the above arguments by the Department, however, we cannot agree with Fidelity that Probate Code section 9203, subdivision (b), provides the exclusive remedy for the Department even in the case of fraudulent failure to give notice. This subject is not expressly addressed in Chapter 5. A similar subject is addressed in Chapter 2, which deals with notice to creditors not subject to Chapter 5. Subdivision (b) *774 of Probate Code section 9053, in Chapter 2, provides that the personal representative is not liable to any person for the failure to give notice unless the creditor establishes the failure was in bad faith, neither the creditor nor the creditor's attorney had actual knowledge of the administration of the estate before expiration of the time for filing a claim, payment would have been made on the claim if it had been properly filed, and the creditor sought an order determining the personal representative's liability within 16 months after letters were first issued to the personal representative.
Fidelity takes the express provision of a remedy against the personal representative in case of a bad faith failure to give notice in Chapter 2 to indicate the absence of a similar provision in Chapter 5 means the Legislature did not intend such a remedy to be available to the public entities addressed there. The original versions of what are now Probate Code sections 9053 and 9203 were enacted at different times, the former in 1987 (Stats. 1987, ch. 923, § 93) and the latter in 1981 (Stats.1981, ch. 102, § 74 [then Probate Code section 700.1]). Probate Code section 700.1, the predecessor to Probate Code section 9203, was enacted as part of legislation dealing with fiscal matters related to Medi-Cal and various other programs. As originally enacted, the statute included provisions requiring notice to the Department of the death of a Medi-Cal recipient, setting forth the time for the Department to file a claim, allowing for a claim against heirs if an estate has already been distributed and stating the Department would be entitled to interest and accrued costs. (Stats.1981, ch. 102, § 74, p. 730.) Subsequent amendments to the statute have dealt with procedural aspects of the required notice and the Department's entitlement.[10] No mention appears in the legislative history of the issue of fraud;n failing to give notice. The language of the statute, throughout its history, suggests simply that (as applied to the Department) it was intended to establish the mechanics for collection of amounts to which the Department is entitled under Welfare and Institutions Code section 14009.5, enacted as part of the same legislation that originally enacted Probate Code section 700.1 (Stats.1981, ch. 102, § 101, p. 738), not that it was meant to foreclose remedies against a personal representative who committed fraud. We see no reason to assume the Legislature consciously chose not to afford the Chapter 5 governmental entities a means of redress against the fraud of a personal representative; it is far more likely the issue was simply not considered.
In general, the Probate. Code is clear in allowing for liability of the personal representative in case of fraud. Probate Code section 8480, subdivision (b), explains that the bond a personal representative is required to give as a condition of appointment "shall be for the benefit of interested persons and shall be conditioned on the personal representative's faithful execution of the duties of the office according to law." Probate Code section 8488, subdivision (a), provides: "In case of a breach of a condition of the bond, an action may be brought against the sureties on the bond for the use and benefit of the decedent's estate or of any person interested in the estate." Probate *775 Code section 7250, subdivision (a), provides that the personal representative and sureties are released from liability when a judgment or order in the administration of the estate becomes final, but subdivision (c) of this section states that the section does not apply "where the judgment or order is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact." With respect to management of the estate, Probate Code section 9603 provides that "[t]he provisions of Sections 9601 and 9602 for liability of a personal representative for breach of a fiduciary duty do not prevent resort to any other remedy against the personal representative under the statutory or common law." We can imagine no reason why the Legislature would wish to preclude the governmental entities asserting claims under Chapter 5 from recovering against a personal representative who breached her statutory duties by fraudulently failing to give notice and obtaining distribution of the state and the surety who guaranteed her faithful performance of her duties. Certainly nothing in Chapter 5 expressly immunizes a personal representative from liability for fraudulently failing to give notice to the Department.
We recognize the rule, relied on by Fidelity, that "[w]here a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided [citation]; otherwise any appropriate common law remedy may be resorted to. [Citation.]" (Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist, supra, 65 Cal.App.3d 121, 131, 135 Cal.Rptr. 192; Faria v. San Jacinto Unified School Dist, supra, 50 Cal.App.4th 1939, 1947, 59 Cal.Rptr.2d 72.) As previously noted, the Department's right to recoup payments made under the Medi-Cal program from a decedent's estate (Welf. & Inst.Code, § 14009.5) and the remedy of a claim against the distributees (Prob.Code, § 9203, subd. (b)), were enacted as part of the same legislation. (Stats.1981, ch. 102, § 101, p. 738, § 74, p. 730.) As to the remedy for a negligent or other failure to give notice that would not amount to extrinsic fraud, we have no doubt Probate Code section 9203, subdivision (b), provides the exclusive remedy. As explained above, however, this statute simply does not address the problem of fraudulent failure to give notice. Accordingly, it is the latter part of the Palo Alto rule that applies here: "[O]therwise, any appropriate common law remedy may be resorted to." (65 Cal.App.3d at p. 131, 135 Cal.Rptr. 192.)
The Department's claims for relief in these two cases are based on the proposition that Phillips's conduct amounted to extrinsic fraud. "`[E]xtrinsic fraud is a broad concept that "tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." [Citations.] The clearest examples of extrinsic fraud are cases in which the aggrieved party is kept in ignorance of the proceeding or is in some other way induced not to appear. [Citation.] In both situations the party is "fraudulently prevented from presenting his claim or defense." [Citations.]'" (Estate of Sanders (1985) 40 Cal.3d 607, 614-615, 221 Cal.Rptr. 432, 710 P.2d 232.) "Extrinsic fraud is present where, as here, a decree is procured from the probate court by conduct which prevents those having an interest in the estate from appearing and asserting their rights. [Citations.]" (State of California v. Broderson (1967) 247 Cal. App.2d 797, 804, 56 Cal.Rptr. 58.)
The cases relied upon by the Department, while not concerning the claim of a governmental entity such as in the present cases, illustrate the point. In State of California v. Broderson, supra, 247 Cal.App.2d at p. 797, 56 Cal.Rptr. 58, the decedent, whose estate consisted of former community property of the decedent and her predeceased husband, died without heirs. The husband's heirs represented to the probate court that they were entitled to all of the estate although they knew they were in fact entitled only to a one-half interest in the estate, the other halfinterest belonging to the State by escheat. No notice was given to the State and the estate was distributed. The heirs' conduct was determined to constitute extrinsic fraud and the state prevailed in its equitable action to set aside the probate decree. In Alexandrou v. Alexander (1974) 37 Cal.App.3d 306, 112 Cal.Rptr. 307, the administrator represented *776 to the court that he was the sole heir of the decedent when in fact he was a stepson not entitled to any of the estate under the laws of intestate succession. After the estate was distributed and the surety exonerated, suits were filed by parties claiming to be heirs, seeking imposition of a trust on the property distributed to the administrator. Rather than imposing a trust, the trial court entered judgments against the administrator and surety. These judgments were upheld on appeal. Estate of Sanders, supra, 40 Cal.3d 607, 221 Cal.Rptr. 432, 710 P.2d 232, held that a court exercising equitable jurisdiction may set aside orders of the probate court in case of fraud. In that case, the decedent's conservator had committed extrinsic fraud in inducing the decedent to change her will to leave the bulk of her estate to him instead of to her son and in obtaining distribution of the estate under the new will. The Supreme Court reversed the trial court's order denying the son's heirs' motion to set aside the orders admitting the will to probate and ordering final distribution of the estate.
The trial court in Estate of Starkweather (A078754) found that Phillips willfully represented to the court a fact she knew to be falsethat the decedent had not received Medi-Cal benefitswith the intent to mislead the court into ordering a final distribution of the estate without requiring Phillips to give notice to the Department and discharge the Department's valid claim. The court concluded this conduct constituted a breach of Phillips' fiduciary duty to the estate. These findings and conclusion are not challenged in either of the present appeals. As in Broderson, Alexandrou and Sanders, Phillips' conduct here kept the Department in ignorance of the proceedings and enabled her to obtain distribution of the estate to her and her brother in derogation of the legitimate claim of the Department.
Fidelity, as we have said, attempts to avoid the application of these cases by reliance on the rule that equitable relief is unavailable where there is an adequate remedy at law. (Martin v. County of Los Angeles, supra, 51 Cal.App.4th 688, 696, 59 Cal.Rptr.2d 303.) According to Fidelity, unlike the situations in Broderson, Alexandrou and Sanders, where there was no remedy available at law, here Probate Code section 9203 prescribes the remedy, a claim against the distributees. The Department urges, in contrast, that the statutory remedy is inadequate in the present case because Phillips has filed for bankruptcy and listed assets insufficient to pay "any significant portion" of her share of the estate.[11] Although the Department has offered no authority in support of her position on this point (and Fidelity has not even addressed the issue of adequacyas opposed to existenceof the statutory remedy), we are aware of case law indicating insolvency of a party may be a factor in concluding a legal remedy to be inadequate. (Hicks v. Clayton (1977) 67 Cal.App.3d 251, 264-265, 136 Cal. Rptr. 512.) Additionally, we have determined the statutory remedy does not necessarily apply to a case of fraudulent failure to give notice. We conclude that Phillips' conduct subjected her and Fidelity to liability based on her breach of her duties as personal representative and under the doctrine of extrinsic fraud. As the Department stresses, any other resolution of this issue in this case would enable personal representatives (and their sureties) to commit fraud such as occurred here with impunity. We share the Department's view that it (as the other governmental entities affected by Chapter 5 of the Probate Code) should be able to rely upon the integrity of the probate system in presenting their claims against estates.
We are also unpersuaded by Fidelity's argument that the remedy of setting aside the final order of distribution is precluded by Probate Code section 9203, subdivision (a). This statute reads: "Failure of a person to give the written notice or request required by this chapter does not affect the validity of any proceeding under this code concerning the administration of the decedent's *777 estate." As explained above, Probate Code section 9203 appears to have been enacted in order to specify the means by which a governmental entity such as the Department may collect sums to which it is statutorily entitled. Subdivision (a), consistent with subdivision (b), makes clear that in the ordinary case a final order of distribution will not be disturbed when the estate has been distributed before the expiration of the time for the Department's claim and the Department will be limited to recovery from the distributees. As with subdivision (b), however, subdivision (a) of Probate Code section 9203 reflects no legislative determination to so limit the Department's remedy where the Department has been prevented from filing its claim before distribution of the estate by the fraud of the personal representative. We construe subdivision (a), like subdivision (b), as applying to the ordinary case of inadvertent or negligent failure to give notice but not to a failure to give notice that amounts to extrinsic fraud.[12]
The judgment in Estate of Starkweather (A078754) is affirmed. The judgment in Belshe v. Fidelity (A078996) is reversed. Costs to the Department.
HAERLE and LAMBDEN, JJ., concur.
NOTES
[1] The parties do not address the question why these actions proceeded independently in different trial courts. The probate proceeding for the administration of the decedent's estate was conducted in Alameda County, the county of the decedent's residence at the time of her death, and the Department's petition to set aside the final accounting and distribution was filed in this case. The Department's complaint against the personal representative and surety was filed in Contra Costa County, alleged in the complaint to be the residence of the personal representative.
[2] In addition to Phillips and Fidelity, the complaint named as a defendant the estate's attorney, Michael Jacobowitz. The Department alleged Jacobowitz knew or had reason to know the decedent had received Medi-Cal benefits and did not provide notice to the Department of her death, and sought to recover $137,997.48 from Jacobowitz because of this failure to provide notice. Jacobowitz apparently successfully demurred to the complaint and the Department has not appealed the dismissal of the complaint as to him.
[3] The second amended complaint also added as a defendant a surety that had issued a $20,000 bond for Phillips' brother, as distributee, to allow him to receive a preliminary distribution of $20,000. The Department sought to recover $20,000 from this surety because Phillips' brother's share of the estate had not been proportionately reduced to pay the Department's claim. According to the Department's brief on appeal in No. A078996, this surety settled with the Department and has been dismissed from the action.
[4] The Department's brief on appeal in A078996 states (without reference to the record) that Phillips answered the second amended complaint but later declared bankruptcy, and that the action against her has been stayed pending resolution of the bankruptcy.
[5] Attached as an exhibit to the Department's petition was a letter to Phillips from the administrator of Care West-Park Central Nursing Center stating that although the decedent was not on Medi-Cal at the time of her death, she was on Medi-Cal from 1988 through April 1, 1992.
[6] Subdivision (b) of the statute lists circumstances in which the Department may not make the claim described in subdivision (a), including during the lifetime of a surviving spouse and where there is a surviving child who is under age 21, blind or permanently and totally disabled. Subdivision (c) directs the Department to waive its claim in whole or in part if enforcement would result in substantial hardship to other dependents, heirs or survivors.
[7] Revenue and Taxation Code section §§ 6487.1 (Sales and Use Tax Law, Rev. & Tax Code §§ 6001 et seq.; Bradley-Burns Uniform Local Sales and Use Tax Law, Rev. & Tax Code, §§ 7200 et seq.; Transactions and Use Tax Law, Rev. & Tax Code, §§ 7251 et seq.); 7675.1 (Motor Vehicle Fuel License Tax Law, Rev. & Tax Code § 7301 et seq.); 8782.1 (Use Fuel Tax Law, Rev. & Tax Code § 8601 et seq.); 30207.1 (Cigarette Tax Law, Rev. & Tax Code § 30001 et seq.); 32272.1 (Alcoholic Beverage Tax Law, Rev. & Tax Code § 32001 et seq.). (Prob.Code, § 9201, subd. (b).)
[8] Unemployment Insurance Code, § 1090. (Prob.Code, § 9201, subd. (b).)
[9] Welfare and Institutions Code section 7277.1 (State Hospitals for the Mentally Disordered, Welf. & InstCode, § 7200 et seq.); Probate Code, § 9202 (Medi-Cal Act, Welf. & Inst.Code, § 14000 et seq.; Waxman-Duffy Prepaid Health Plan Act, Welf. & Inst.Code, § 14200 et seq.). (Prob.Code, §9201, subd. (b).)

Probate Code section 9201, subdivision (b), also lists the Personal Income Tax Law (Rev, & Inst.Code, § 17001 et seq.), designating the "applicable section" as Revenue and Taxation Code section 19266. This latter section has been repealed (Stats.1993, ch. 31, § 22); historical notes in West's Annotated Codes refer to Revenue & Taxation Code section 19517, which is concerned with tax assessments against a decedent's estate. The inaccuracy in statutory reference is not relevant to our discussion.
[10] Amendments to Probate Code section 700.1 in 1981 altered the language defining the parties required to provide notice to the Department, lengthened the time in which notice was required to be given, specified procedural requisites for the notice, changed references from "heirs" to "distributees," clarified that the Department's entitlement was limited to each distributee's share of the distributed assets, further defined the rate of interest to which the Department would be entitled, and added that "[f]ailure to comply with the provisions of this section shall not affect the validity of any proceeding under this division." (Stats.1981, ch. 1163, § 2, p. 4654.)

In 1987, section 700.1 was repealed (Stats. 1987, ch. 923, § 37, p. 2983) and its substance enacted as Probate Code sections 9202 and 9203 (Stats.1987, ch. 923, § 93, p. 3021.) The provisions requiring notice to the Department and establishing the time in which the Department's claim had to be filed were contained in Probate Code section 9202. Probate Code section 9203 assumed its present form, with subdivision (a) providing that "[f]ailure of a person to give the written notice or request required by this chapter does not affect the validity of any proceeding under this division" and subdivision (b) describing the Department's right to claim against the distributees and specifying the applicable rate of interest. Probate Code section 9203 was repealed and reenacted, along with the rest of the Probate Code, in 1990. (Stats. 1990, ch. 79, § 13, p. 790.)
[11] The Department also notes the unfairness of a remedy that requires the Department to claim against the other heir, Phillips's brother, who is innocent of any wrongdoing. Probate Code section 9203, subdivision (b), however, allows the Department to make a claim against the distributees even in the absence of any wrongdoing by anyone where the estate has been distributed before expiration of the time for the Department to make a claim.
[12] At oral argument, counsel for Fidelity made statements suggesting that the Department could not properly sue Fidelity until after the liability of the personal representative had been finally established. To the extent Fidelity was arguing it should not have been joined in this litigation, the argument has been waived by failure to raise it earlier.