■ BANK OF SEOUL, Appellant-Respondent, v NORWEST BANK MINNESOTA, N.A., Respondent-Appellant. [630 NYS2d 520] —Order, Supreme Court, New York County (Joan Lobis, J.), entered March 23, 1994, which denied plaintiff's motion and defendant's cross motion for summary judgment, affirmed, without costs.

On February 12, 1991, defendant Norwest Bank Minnesota, N.A. ("Norwest") issued an irrevocable letter of credit (the "L/C") in the amount of $110,040 to Cho Hung Bank, Pusan Branch, Republic of Korea. Cho Hung Bank subsequently transferred the L/C to plaintiff Bank of Seoul. The L/C denominated Mi Yang Chemical Company, Ltd. of Pusan, Korea ("Mi Yang") as the beneficiary and Sanshoe Worldwide Corporation of New York, New York ("Sanshoe") as the account party. The L/C was issued pursuant to a contract of sale for 12,000 pairs of shoes from Mi Yang to Sanshoe.

On February 18, 1991, plaintiff presented the L/C with the required documents to defendant for payment. By telex dated February 25, 1991, Norwest informed Bank of Seoul that there were discrepancies in the documentation and stated that "we are contacting L/C applicant [Sanshoe] for approval." Pursuant to telexes dated May 1, 1991 and May 30, 1991, defendant advised plaintiff that Sanshoe had not consented to the discrepancies. Unbeknownst to plaintiff, on the very day (February 25, 1991) that defendant sought Sanshoe's permission to waive the discrepancies, Sanshoe telexed defendant with the simple message: "Please waive discrepancies and pay beneficiary."

On March 1, 1991, Sanshoe filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. The goods covered by the documents held by

plaintiff were eventually sold in bankruptcy to a third party. Plaintiff received no proceeds from the sale.

On June 10, 1991, defendant returned all the documents presented under the L/C to plaintiff and in August 1993 plaintiff commenced the underlying action. The complaint interposed two causes of action: the first cause of action asserting that defendant wrongfully and fraudulently dishonored the L/C since Sanshoe specifically waived the discrepancies in the documentation; and the second cause of action asserting breach of contract in that defendant had a contractual duty to honor the L/C since its terms and conditions were complied with.

Plaintiff subsequently moved for summary judgment on the ground, *inter alia,* that defendant was aware of Sanshoe's imminent bankruptcy filing and chose to falsely and fraudulently misrepresent Sanshoe's position to avoid paying plaintiff. Defendant cross-moved for summary judgment asserting that it had an absolute right to refuse payment on facially nonconforming documentation. The IAS Court denied both motions holding that issues of fact existed as to whether defendant intended to waive its right to demand conforming documentation by informing plaintiff that it was seeking approval from Sanshoe to disregard the discrepancies.

We agree with the IAS Court that pursuant to New York law, a bank is entitled to require strict compliance with a letter of credit (*United Commodities-Greece v Fidelity Intl. Bank,* 64 NY2d 449, 455, *rearg denied* 65 NY2d 923; *Voest-Alpine Intl. Corp. v Chase Manhattan Bank,* 707 F2d 680, 682-683; *Bucci Imports v Chase Bank Intl.,* 132 AD2d 641, 642), rather than the more relaxed requirement of substantial compliance (*Wood v State Bank,* 203 AD2d 278, 279). We also agree that under the circumstances presented herein, an issue of fact exists as to whether defendant intentionally waived its right to demand strict compliance with the L/C when it informed plaintiff it was requesting Sanshoe's permission to disregard the discrepancies and thereafter sought, and received, that permission (*Voest-Alpine Intl. Corp. v Chase Manhattan Bank, supra,* at 684-685).

We reject defendant's contention that plaintiff failed to plead its waiver claim as such claim can be gleaned both from the complaint and from plaintiff's argument in support of its motion for summary judgment. Concur—Sullivan, J. P., Rubin, Asch and Tom, JJ.

Nardelli, J., dissents in a memorandum as follows. On or about February 12, 1991, defendant Norwest Bank Minnesota, N.A. (Norwest or issuer) issued a letter of credit (L/C) to Cho

Hung Bank of Pusan, by whom it was eventually transferred to plaintiff Bank of Seoul (BOS or plaintiff). The L/C named Mi Yang Chemical Company as the beneficiary and Sanshoe Worldwide Corporation (Sanshoe), Norwest's customer and the prospective purchaser of 12,000 pairs of footwear, as the account party.

L/C's developed over the last 700 years so that, especially in foreign trade, sellers would not have to give up possession of their goods before being paid and buyers would not have to pay their money before receiving the goods (*see*, 2 White & Summers, Uniform Commercial Code, ch 19, at 1 *et seq.* [3d ed]). They are issued by banks because banks have the money and are less likely than buyers to become insolvent. The "bank issuer's agent should be able to sit with a necktie and a white shirt at a desk in a bank and by looking at papers that are presented to him determine whether the bank is obliged to make payment or not" (*id.*, § 19-2, at 8). This is not facetiousness. For such a person to make such a decision while sitting at a desk, the papers looked at must mean what they say. In this State they are held to mean what they say and the bank is entitled to insist on strict conformity with the L/C (*United Commodities-Greece v Fidelity Intl. Bank*, 64 NY 449, 455). New York is a State with a long banking history, and it is understandable that it should recognize that "[t]he bank's sole function is the financing; it is not concerned with or involved in the commercial transaction" (*Marino Indus. Corp. v Chase Manhattan Bank*, 686 F2d 112, 115 [2d Cir]). But even States with a more recent maturity as banking jurisdictions must inevitably come to this same conclusion. Thus, "[f]or some unexplained reason the State and Federal courts in Texas have been busy defining the requirements for documentary compliance on letter of credit * * * For the most part, the cases are well reasoned and demonstrate a care and sophistication that should make even the big city courts in New York and California jealous" (2 White & Summers, *op. cit.*, § 19-5, 1994 Pocket Part, at 4). The reason may be that Texas has also become an important banking State. Where an underlying contract between a bank's customer purchaser of oil and the beneficiary-seller was for the transfer of sweet oil but the letter of credit specified sour oil, documents identifying the oil as "SWT" were found deficient; the court pointed out that the risk is on the beneficiary to see that the letter of credit conforms to the underlying contract and, having failed to do that, the beneficiary had to bear the loss (*Matter of Coral Petroleum*, 878 F2d 830, 831 [5th Cir]). It should be noted that the beneficiary in *Coral* argued that the L/C should be reformed because of

mutual mistake of fact. The Fifth Circuit found no mutual mistake, however, since the issuer was in no way mistaken in writing what it had been told was the underlying agreement (*supra*, at 834). The attempt in the instant case to establish a waiver of a condition of the L/C is analogous to and should be as fruitless as the attempt in *Coral* to show mutual mistake of fact. In order to establish a waiver it is necessary that there be an " ' "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it" ' " (*United Commodities-Greece v Fidelity Intl. Bank, supra*, at 457). No such relinquishment has been shown here. In *United Commodities* (*supra*), the Court of Appeals rejected both an estoppel and waiver argument, noting that it would have been impossible to cure the defect anyway. The instant case too is one where cure was clearly impossible. The L/C covered only shipments from March 5 to March 20, 1991, inclusive, and the documents showed a February 18, 1991 shipping date. This provision in the instant L/C is a serious one going to the period during which the bank had agreed to expose itself to loss, and it is difficult to see how any violation of it could be cured. Disappointed beneficiaries, however, will always want to chip away at the requirement of strict conformity with claims of waiver, modification, or estoppel. Courts in banking jurisdictions cannot permit this unless the waiver, modification, or estoppel is clearly established.

There is the added factor here that Norwest lied to BOS, telling BOS that Sanshoe had refused to waive nonconformity, although Sanshoe, four days before its own application in bankruptcy, did consent to Norwest's waiver of the nonconformity. The motion court correctly noted, however, that BOS had failed to cite any authority to support its position that Sanshoe's "waiver of the nonconformities in the documentation" obligated Norwest to waive them. But more than that, there is authority that asking its customer for permission to pay does not preclude the issuer from asserting the nonconformity itself (*Western Intl. Forest Prods. v Shinhan Bank*, 860 F Supp 151, 155 [SD NY]; *see also, Alaska Textile Co. v Chase Manhattan Bank*, 982 F2d 813, 824 [2d Cir]). In *Full-Bright Indus. Co. v Lerner Stores* (818 F Supp 619 [SD NY]), on the other hand, it was held that it was improper for the issuer to consult with its customer and that its doing so estopped it from asserting discrepancies. In light of the usefulness of such inquiries, however (*see, Alaska Textile Co. v Chase Manhattan Bank, supra*, at 824), that holding is unpersuasive. Here there has been no showing of the intentional relinquishment of a known right (*see, United Commodities-Greece v Fidelity Intl. Bank, supra*, at 457).

I would grant defendant summary judgment dismissing the complaint.