[No. B125737. Second Dist., Div. Two. Jan. 18, 2000.]

LECTRODRYER, Plaintiff and Appellant, v.
SEOULBANK, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of *The cross-appeal by Lectrodryer*.

**COUNSEL**

Sullivan & Cromwell, Michael H. Steinberg and Daniel E. Sobelsohn for Plaintiff and Appellant.

Lee & Hong and David C. Degerman for Defendant and Appellant.

**OPINION**

**BOREN, P. J.**—*Lectrodryer* sued *SeoulBank* for unjust enrichment arising from the bank's issuance of a letter of credit. SeoulBank appeals following a

jury verdict against it awarding $493,000. Lectrodryer cross-appeals, alleging demurrers were improperly sustained as to causes of action for fraud and intentional interference with contractual relations. We affirm.

FACTS

Lectrodryer, a small Kentucky company, manufactured and delivered for JDP, a California exporter of industrial equipment, a molecular sieve dryer used in refining oil into gasoline. Pursuant to a 1994 purchase order, the price of the sieve dryer was $493,000, payable by an irrevocable letter of credit. Prior to delivery, JDP arranged to resell the sieve dryer to Dae Ahn, a South Korean oil refinery. The resale price was $601,701, for a profit to JDP of approximately $108,000.

JDP was one of SeoulBank's largest customers and was in serious financial difficulty. JDP wrote three checks totaling approximately $494,000 to SeoulBank to obtain a letter of credit from the bank to pay off Lectrodryer. SeoulBank issued the letter of credit. Thereafter, two of JDP's checks totaling more than $492,000 bounced. But after receiving payment of $500,000 from Dae Ahn, JDP paid SeoulBank $492,000 with two cashier's checks.

Lectrodryer mailed its documentary presentation to SeoulBank accompanied by a draft for payment in the amount of $493,000. But SeoulBank did not honor the letter of credit. Rather, SeoulBank allowed the letter of credit to expire and claimed Lectrodryer did not comply with the terms of the letter of credit. SeoulBank asserted there were fatal discrepancies between the description in the letter of credit and the description in the documents submitted by Lectrodryer to the bank.[1] JDP sent SeoulBank a discrepancy waiver, a fairly routine commercial practice.

Even though SeoulBank had (1) received the funds it demanded as a precondition to issuing the letter of credit, and (2) received a waiver of any discrepancies from its customer, it declined to pay Lectrodryer, citing the discrepancies in Lectrodryer's documentation. SeoulBank also claimed the letter of credit was not prepaid. After SeoulBank refused to pay Lectrodryer under the letter of credit, it did not return the $493,000 to JDP. Rather, it retained those funds to reduce its exposure on JDP's credit line with the bank. JDP went into bankruptcy.

---

[1]Specifically, SeoulBank asserted that Lectrodryer failed to submit the required combined transportation bill of lading showing shipment of the goods from Kentucky to New York to Korea, but rather submitted only a straight bill of lading showing shipment of the goods from Kentucky to New York. Second, SeoulBank asserted that the documents submitted incorrectly listed the purchase order number as "P-93PEP03L-SV," rather than as "P-93PED03L, Rev. 2."

The trial court sustained SeoulBank's demurrer to causes of action for fraud and intentional interference with contractual relations. The jury unanimously returned a verdict in favor of Lectrodryer, awarding $493,000. Prejudgment interest and costs were also awarded.

## DISCUSSION

*The appeal by SeoulBank*

■ SeoulBank contends that Lectrodryer's cause of action for unjust enrichment is an impermissible attempt to enforce indirectly a letter of credit by resort to equity. However, even accepting the premise that a bank's obligation to pay a letter of credit is determined by applying strict legal guidelines to the terms and conditions of the letter of credit (see *Thomas J. Palmer, Inc. v. Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 150-151 [164 Cal.Rptr. 181]; Cal. U. Com. Code, § 5108) without reference to equitable principles (see *Lass v. Eliassen* (1928) 94 Cal.App. 175, 179 [270 P. 745]), such premise is irrelevant here.

The focus of Lectrodryer's case was on what happened to the proceeds of the sale of the sieve dryer *after* the letter of credit expired. Lectrodryer presented substantial evidence at trial to establish that the letter of credit was prepaid by the proceeds from the sale of the sieve dryer. Evidence also supported the conclusion that Lectrodryer satisfied the elements for a claim of unjust enrichment: receipt of a benefit and unjust retention of the benefit at the expense of another. (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662-1663 [15 Cal.Rptr.2d 173].) Here, substantial evidence supports the conclusion that SeoulBank was unjustly enriched when it retained for itself the funds JDP used to purchase the letter of credit for the purpose of paying Lectrodryer, and SeoulBank should have made those funds available to JDP for payment to Lectrodryer when the letter of credit expired.

Ample evidence presented to the jury supports the theory that JDP and SeoulBank intended the letter of credit to be "prepaid." For example, at the time JDP applied for the letter of credit, it was already in default on other loan obligations to SeoulBank, making it unlikely that SeoulBank would have extended further credit to JDP. SeoulBank's representative, Mr. Lee, demanded that JDP provide SeoulBank with $493,000 as a precondition to issuance of a letter of credit in that amount. The chairman of JDP, Mr. Kim, testified originally (though he later claimed to the contrary) that the letter of credit was to be prepaid. On the same day JDP applied for the letter of credit, it provided SeoulBank with two checks totaling $492,983.26, and a

third check for $1,500, approximately the same amount of the letter of credit sought and the issuance fee. Further supporting the conclusion that JDP had purchased a "prepaid" letter of credit, there was no indication that Seoul-Bank undertook any credit review of JDP before issuing the letter of credit on the same day JDP applied for it.[2]

SeoulBank further urges that its refusal to make payment under a letter of credit cannot create unjust enrichment for the bank. SeoulBank reasons that it received no benefit for which it can be compelled to make restitution, as JDP did not deposit funds to prepay the letter of credit but relied on an existing line of credit with SeoulBank, and Lectrodryer had no right to any funds that JDP might have predeposited with SeoulBank. However, the claim that the payments on January 17 were to the credit line was a factual claim rejected by the jury's verdict. Significantly, SeoulBank does not dispute that it could not retain funds used to purchase a prepaid letter of credit if the letter of credit was closed after never having been paid.

Equally unavailing is SeoulBank's complaint that Lectrodryer did not qualify for payment under the letter of credit, and that SeoulBank did not waive its right to demand strict compliance with the terms of the letter of credit. Even if letter of credit principles applied in the present case, and even if we rejected Lectrodryer's claim for unjust enrichment, Lectrodryer demonstrated that SeoulBank waived any right to rely upon notions of strict compliance with the precise terms of the letter of credit. (See *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

Substantial evidence from, for example, Lectrodryer's expert witness on banking practices and letter of credit procedures indicated that it is the responsibility of the negotiating bank (here, SeoulBank) to evaluate independently any letter of credit documents, and that its delegation of this duty to

---

[2]Moreover, although Lectrodryer was not required to demonstrate wrongful conduct by SeoulBank (see *Frank v. Tavares* (1956) 142 Cal.App.2d 683, 688 [298 P.2d 887]), the jury could have found that SeoulBank's deception after the expiry date was a further fact justifying an award to Lectrodryer for unjust enrichment. Lectrodryer urges that SeoulBank essentially lulled JDP into not requesting available funds from the credit line. If the letter of credit in fact expired on February 21, 1996, the money used to fund the letter of credit could have been used to create availability on the credit line, which was open until February 28, 1996. Since SeoulBank at no time declared a default under the credit line or canceled the credit line, JDP could have requested funds under the credit line for payment to Lectrodryer on February 22. However, Lectrodryer urges that because JDP was lulled into believing that SeoulBank would extend the expiry date and thus pay Lectrodryer, there was no reason for JDP to seek those funds from SeoulBank. Under such reasoning and as an independent and alternative basis to support the jury's verdict, arguably SeoulBank should not profit by its deceit and take advantage of its own wrong.

JDP implied that SeoulBank intended to abide by its customer's instructions on payment. Also, SeoulBank sought and obtained from JDP a waiver of "any discrepancies" that might be found in the documentation submitted by Lectrodryer. As the expert witness further explained, there would be no reason for SeoulBank to seek this waiver from JDP unless it had first determined that it would not insist upon whatever right it had to demand strict compliance with the terms of a letter of credit, and would instead comply with JDP's instructions as to whether payment should be made.[3] Clear, convincing, and substantial evidence thus supports the conclusion of a wrongful dishonor by virtue of the waiver.

Nor is there any merit to SeoulBank's contention that Lectrodryer had no right to a jury trial and that SeoulBank was thus entitled to a statement of decision. As SeoulBank acknowledges, Lectrodryer's claim for restitution was "technically an action at law." Indeed, Lectrodryer sought and received money damages as its only remedy. Such a remedy, even when equitable principles are applied, indicates the gist of the claim is legal in nature. (See *Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 694-697 [59 Cal.Rptr.2d 303].)

SeoulBank's assertion that the case nonetheless should have been tried to the court because the claim required the application of equitable principles is thus unavailing. (*Philpott v. Superior Court* (1934) 1 Cal.2d 512, 522 [36 P.2d 635, 95 A.L.R. 990]; see, e.g., *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1254-1255, 1264 [241 Cal.Rptr. 22, 743 P.2d 1279] [reviewing estoppel and unjust enrichment claim presented to a jury].) Accordingly, Lectrodryer had a right to a jury trial, and the jury's unanimous verdict was not merely advisory and did not require a statement of decision (Code Civ. Proc., § 632) by the court.

*The cross-appeal by Lectrodryer*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[3]We also note a somewhat similar case in another jurisdiction where, however, SeoulBank sued to obtain payment on a letter of credit. SeoulBank successfully argued that another bank had waived its right to insist upon strict compliance with the terms of a letter of credit by seeking a waiver of discrepancies from its customer. (See *Bank of Seoul v. Norwest Bank Minnesota* (1995) 218 A.D.2d 542, 543 [630 N.Y.S.2d 520, 522].)

   \*See footnote, *ante*, page 723.

## DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

Nott, J., and Zebrowski, J.,* concurred.

The petition of appellant Seoulbank for review by the Supreme Court was denied May 17, 2000.

---

*Retired Associate Justice of the Court of Appeal, Second District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.