Filed 6/10/26  Selene Finance v. Miller CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SELENE FINANCE, LP, | |
| Plaintiff and Respondent, | G065356 |
| v. | (Super. Ct. Case No. 30-2024-01412902) |
| CHRISTINE MILLER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Andre De La Cruz, Judge. Affirmed. Request for Judicial Notice. Granted. Motion to File Sur-reply. Granted.

The Miller Firm and Christine Miller, for Defendant and Appellant.

Kabat Chapman & Ozmer, Jonathan D. Marvisi and Jessica D. Gallegos, for Plaintiff and Respondent.

*       *       *

After Selene Financial, LP (Selene) filed a complaint alleging various claims against her, Christine Miller filed a motion pursuant to Code of Civil Procedure section 425.16 (section 425.16) to strike the allegations and claims in the complaint (hereinafter, the "anti-SLAPP motion").[1] The trial court denied the anti-SLAPP motion, concluding Miller failed to show the claims fell within the scope of section 425.16. On appeal, Miller contends her acts are protected under section 425.16 because they arise from her legal representation of a client. We disagree. The claims are not based on protected activity. Accordingly, we affirm.

STATEMENT OF THE CASE[2]

On July 15, 2024, Selene filed a verified complaint against Miller, Martha Kirton, and other defendants, alleging various causes of action arising from the June 2024 sale of Kirton's house (the house). The complaint alleged that Miller was Kirton's attorney in a lawsuit involving the house and acted as her real estate agent in selling the house. It alleged that Kirton had sued Selene, but Selene prevailed on summary judgment. On April 18, 2024, the superior court awarded Selene attorney fees and costs, and ordered those

---

[1] All further statutory references are to the Code of Civil Procedure, unless stated otherwise.

[2] We grant Miller's unopposed Request for Judicial Notice of various court filings.

amounts to be added to the balance owed under the deed of trust on Kirton's house (April 18 order).[3]

The complaint alleged that, on April 23, 2024, Miller, as counsel for Kirton, sought a payoff demand. On April 29, counsel for Selene responded by email with an amount of $525,104.86. In that same email, Selene's counsel stated the payoff quote "does not yet include the fees/costs ordered by the Court." On May 10, 2024, Selene's foreclosure counsel sent a demand letter to Miller, stating the amount due on the loan was $768,285.29, which included the fees and costs awarded by the court. The same day, Kirton listed the house for sale. Later in May, the escrow company retained for the sale requested a payoff amount from Selene. Because the superior court had not yet entered an amended judgment, Selene provided a payoff amount of $526,480.43, which did not include the fees and costs. On June 5, a grant deed was recorded transferring title in the house out of Kirton's name. The complaint alleged on information and belief that the house was sold for $940,000. Selene, however, was only paid $526,480.43 from the sale proceeds. Selene demanded the remaining amount from Kirton, but Kirton did not respond.[4] The complaint alleged causes of action for fraud, intentional interference with contract, unjust enrichment, money had and received,

---

[3] Selene also filed a motion seeking an order to show cause as to why Miller should not be held in contempt of court for failing to follow the April 18 order. After the trial court granted the motion, Miller filed a petition for extraordinary writ challenging the contempt proceedings. After a panel of this court issued an alternative writ, the trial court vacated its order setting a contempt hearing.

[4] In September 2024, Kirton, who was not represented by Miller, settled with Selene, and in late October 2024, she paid Selene $242,071.48, the full amount demanded.

3

declaratory relief, and violation of Business and Professions Code section 17200 against Miller.

On October 4, 2024, Miller filed an anti-SLAPP motion, seeking to strike the allegations and claims against her. She argued the acts alleged in the complaint are protected under section 425.16, subdivisions (e)(1) and (e)(2) because those acts arose out of her representation of her client in the underlying case. She further argued Selene could not show the claims have minimal merit because the alleged acts are absolutely privileged.

Selene opposed the anti-SLAPP Motion. It argued Miller's alleged acts are not protected because they "occurred after litigation had ended, were not in furtherance of any ongoing litigation, nor did they serve to advance her constitutional right to petition." Selene also argued that, even if the acts fell within the scope of section 425.16, it demonstrated a strong likelihood of success because the allegations established the claims have more than minimal merit.

In reply, Miller argued litigation had not ended because the case remained open with pending matters, and her alleged acts were in furtherance of the objectives of litigation. Miller further argued Selene failed to offer any evidence to establish a probability of prevailing on its claims.

On March 18, 2025, the trial court denied the anti-SLAPP motion. It concluded Miller failed to meet her initial burden to show the alleged acts are protected under section 425.16, subdivision (e)(1) or (e)(2) because "the conduct that forms the basis for the [complaint] did not arise out of the underlying suit, but rather, occurred after the action had effectively concluded. Although the amended judgment had not yet been entered, none of the acts complained of involved the entry of the amended judgment or any other issue that had been before the Court." It further determined that

4

"Miller has not shown that the Court was considering any issues regarding the sale of the Property or Selene's attempt to collect on the judgment. It appears that the only issue remaining before the Court was entry of an Amended Judgment consistent with its order."

Miller appealed from the order denying her anti-SLAPP motion.

DISCUSSION

I.

ANTI-SLAPP STATUTE

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

Here, the trial court denied Miller's anti-SLAPP motion after concluding she failed to meet her first-step burden. "The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the

5

wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of "'act[s]'" protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884, quoting § 425.16, subd. (e).)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

II.

MILLER FAILS TO SHOW HER ALLEGED ACTS ARE PROTECTED

Miller contends the claims in the complaint against her should be stricken pursuant to section 425.16 because the "[t]he complaint targets [her] communications with opposing counsel, her legal advice to her client regarding how to address [Selene's] error in the payoff demand, and her interpretation and implementation of the April 18 [order]. These are all core litigation activities protected under California's anti-SLAPP statute." We disagree. As discussed further below, the claims against Miller are not based on protected activity. Rather, the protected activity merely provides context or evidence of Miller's alleged wrongdoing.

A. *Fraud and Deceit*

The complaint alleges a claim for fraud and deceit against Miller. Generally, ""[t]he elements of fraud, which give[ ] rise to the tort action for

6

deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"" (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.) The alleged acts which support this claim include: (1) Miller's failure to disclose to Selene the sale of Kirton's house before entry of an amended judgment incorporating the April 18 order awarding Selene fees and costs; (2) Miller's knowledge of the April 18 order; (3) Miller's intent to deprive Selene of the benefits of the April 18 order; (4) Selene's lack of knowledge of the concealment; and (5) Selene's damages, including the cost of bringing the instant lawsuit. Miller has not shown any of these acts fell within the ambit of section 425.16, subdivision (e)(1) or (e)(2), as asserted in her anti-SLAPP motion.

Under section 425.16, a protected activity is "any written or oral statement or writing made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) Here, the alleged acts are not written or oral communication in a judicial or official proceeding. Rather, the acts occurred outside of any judicial or official proceeding.

Nor do the alleged acts fall within the scope of section 425.16, subdivision (e)(2), which defines protected activity as "any written or oral statement or writing made in connection with an issue under consideration or review by . . . a judicial body." Here, the alleged acts are connected to the April 18 order, but as the trial court determined, there is no issue in that order that was still under consideration or review. Stated differently, the amount of fees and costs and whether they would be added to the deed of trust on the house had been determined and were no longer under review or consideration.

7

Miller argues her communications with opposing counsel, her legal advice to her client about how to respond to Selene's incomplete payoff demand, and her interpretation and implementation of the April 18 order are protected activities in connection with ongoing litigation. However, there are no allegations in the complaint that reference Miller's legal advice to Kirton or her interpretation and implementation of the April 18 order. The words "advice," "advise," "interpret," and "implement," and variations of those words, do not appear in the complaint. Accordingly, there are no allegations to strike. As to the allegations concerning litigation-related activities, these allegations provided context for the claim of fraud and deceit or evidence of liability. For example, allegations about Miller's communications with opposing counsel show her actual knowledge of the April 18 order and her failure to disclose the listing or sale of Kirton's house to opposing counsel. The allegations concerning litigation-related activities did not form the basis for liability.

Miller's reliance on *Ramirez v. McCormack* (2025) 113 Cal.App.5th 493 and *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141 is misplaced. In those cases, the appellate courts concluded the defendant lawyer's litigation-related speech and activity are protected under section 425.16. However, the litigation-related acts in those cases were made "in connection with litigation" and formed the basis for liability. (See *Thayer,* at p. 154 [noting that "'[n]umerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity. [Citations.] Put otherwise, legal advice and settlement made in connection with litigation are within section 425.16"]; accord, *Ramirez*, at p. 500 ["We agree wholeheartedly with *Thayer*"].) In contrast, here, the litigation-related

8

activities were not in connection with an issue under review or consideration and did not form the basis for liability.

*B. Intentional Interference with Contract*

A similar analysis applies to the claim for intentional interference with contract. The elements of this claim are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Here, the allegation supporting this claim include: (1) the existence of a contract (the deed of trust) between Selene and Kirton; (2) Miller's knowledge of that contractual relationship; (3) Miller's urging of Kirton not to pay the additional amount ordered to be added to the deed of trust; (4) actual failure to pay the additional amount on the sale of the house; and (5) damages to Selene. Allegations concerning elements (1), (2), (4) and (5) do not implicate any litigation-related activity. The allegation concerning element (3) [urging Kirton not to pay fees and costs] provides evidence of liability, but arguably is suggestive of litigation-related activity such as providing legal advice. However, Miller has not shown any such "legal advice" was made in connection with an issue under review or consideration. Stated differently, whether Kirton was contractually obligated to pay the fees and costs added to the deed of trust by the April 18 order was not an issue under review or consideration in the case. Additionally, we are not persuaded that urging your client to evade a valid court order is in furtherance of one's free speech or petitioning rights.

9

*C. Remaining Claims*

The derivative Business and Professions Code section 17200 claim falls outside the scope of section 425.16 for the same reasons the fraud and deceit claim failed. As to the claims for unjust enrichment and money had and received, the core allegations involve whether Miller improperly obtained or retained money or a benefit that belonged to Selene, i.e., the fees and costs added to the deed of trust. (See *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 [The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another"]; *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 ["A cause of action for money had and received is stated if it is alleged [that] the defendant 'is indebted to the plaintiff in a certain sum "for money had and received by the defendant for the use of the plaintiff"'"].) The supporting allegations either do not implicate litigation-related activities or the litigation-related activities are merely evidence of liability. The same reasoning applies to why the declaratory relief claim here falls outside the scope of section 425.16. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 ["To qualify for declaratory relief, Wilson would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [Wilson's] rights or obligations'"].)

In sum, Miller has not met her burden of showing the alleged acts are protected under section 425.16. The trial court properly denied her anti-SLAPP motion.

DISPOSITION

The order denying the anti-SLAPP motion is affirmed.
Respondent is entitled to its costs on appeal.


DELANEY, ACTING P. J.


WE CONCUR:


GOODING, J.


SCOTT, J.

11