[No. B083585. Second Dist., Div. Five. Dec. 12, 1996.]

JOSE MARTIN et al., Cross-complainants and Respondents, v. COUNTY OF LOS ANGELES, Cross-defendant and Appellant.

**COUNSEL**

Veatch, Carlson, Grogan & Nelson, Mark A. Weinstein, Pollak, Vida & Fisher, Girard Fisher and Daniel P. Barer for Cross-defendant and Appellant.

Dickson, Carlson & Campillo, Hall R. Marston, Aaron M. Peck, Cooper, Kardaras & Scharf and Victor Aguilera for Cross-complainants and Respondents.

## OPINION

**ARMSTRONG, J.**—In this equitable indemnity action, we determine that the County of Los Angeles was entitled to have the case heard by a jury. Because the trial court denied the county a jury trial, we reverse the judgment. In the appeal of the underlying wrongful death action, we ruled that Donald MacIntyre, Jeffrey MacIntyre, and Megan MacIntyre (the MacIntyres), plaintiffs therein, were entitled to judgment against the county. (*MacIntyre* v. *County of Los Angeles* (Dec. 12, 1996) B080699 [nonpub. opn.].) Because the jury in that case allocated the comparative fault of the various tortfeasors, assigning to the county 13 percent responsibility for the decedent's death, a new trial is not required.

### FACTS

On September 16, 1987, Christine MacIntyre was killed when a runaway truck owned by Bourget Brothers Building Materials (Bourget) and driven by Jose Martin on Kanan Dume Road crashed through the intersection at Pacific Coast Highway.

The MacIntyres brought a wrongful death lawsuit against Martin, Bourget, Western Truck Service, which maintained Bourget's vehicles, the County of Los Angeles, and the State of California. Martin and Bourget cross-complained against the county, the state, and Western Truck Service.

Western Truck Service settled with the MacIntyres prior to trial. Martin and Bourget settled with the MacIntyres after the trial commenced. The complaint and cross-complaint were to be tried together. However, during the course of the trial, Martin and Bourget waived a jury trial as to the cross-complaint. Consequently, after both sides in the wrongful death action had rested and over the county's objection, the court severed the cross-complaint for later trial to the court alone.

The MacIntyres' cause of action against the state and county was predicated on public entity liability for injury caused by the dangerous condition of property as set forth in Government Code section 835. The jury returned a special verdict. To the question, "Assuming that 100% represents the total causes of the plaintiffs['] damages, what percentage of this 100% is due to the actions or omissions of the County of Los Angeles, and/or the State of California, and all other persons?" the jury responded: the county: 13

percent; the state: 0 percent; Bourget: 39 percent; and Martin: 48 percent.[1] Notwithstanding this apparent finding of 13 percent fault attributable to the County, the trial court entered judgment in favor of the county based on an affirmative defense. In *MacIntyre* v. *County of Los Angeles, supra*, B080699, we held that the trial court erred in entering judgment for the county, and directed the court to enter judgment for the MacIntyres.

In the bench trial of respondents' equitable indemnity claim, the trial court found that respondents and the county were concurrent tortfeasors, and that the county was 50 percent at fault for the MacIntyres' damages.

## CONTENTIONS

█ The county appeals the judgment for equitable indemnity, arguing that it was denied its right to a jury trial on the cross-complaint. █ The county also argues that the jury findings of comparative fault in the wrongful death action should be given collateral estoppel effect.

## DISCUSSION

On May 25, 1993, respondents' attorney delivered his opening remarks to the jury impaneled to hear the MacIntyres' wrongful death action against the county and the state, as well as respondents' equitable indemnity cross-complaint against the public entities.[2] On August 4, 1993, counsel for respondents sought to withdraw the issue of the cross-complaint from the jury. The county objected to this request, arguing that it had a right to a jury trial on the issue of equitable indemnity. The trial court ruled that an equitable indemnity action is an action in equity, to which the parties are not entitled to a jury. Consequently, the court severed the cross-complaint and heard the equitable indemnity claim later, without a jury.

The county contends that denial of its right to a trial by jury constituted a miscarriage of justice and is per se reversible error. The county further maintains, however, that the jury in the wrongful death action rendered a finding regarding the comparative fault of the various tortfeasors, and that retrial of the equitable indemnity action is therefore not required. We agree, and order judgment entered herein in accordance with the jury's finding that the county is 13 percent liable for the MacIntyres' damages.

---

[1] Other persons and entities who may have "caused" the accident were also listed on the special verdict form. However, the jury inserted no percentage figure next to their names.

[2] Respondents and the MacIntyres entered their settlement on the record on May 11, 1993. Although not entirely clear from the appellate record, it appears that the settlement was reached after jury selection had commenced, but before the jury was impaneled to hear the lawsuit.

## 1. *Right to jury trial*

█ "The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.] As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.] [¶] . . . ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.] Although . . . 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]. Thus, 'The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury . . . .' [Citation.]" (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 8-9 [151 Cal.Rptr. 323, 587 P.2d 1136], original italics; see also *Walton* v. *Walton* (1995) 31 Cal.App.4th 277 [36 Cal.Rptr.2d 901].)

█ There is no question that an implied indemnity cross-complaint involves the application of equitable principles. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 583 [146 Cal.Rptr. 182, 578 P.2d 899]; *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 328 [146 Cal.Rptr. 550, 579 P.2d 441].) However, "From the fact that equitable principles are . . . used to establish the alleged liability of the defendants, it does not necessarily follow that the action to enforce that liability is equitable. The law courts now recognize and apply many equitable principles and grant relief based thereon where, as here, legal relief is sought in the form of a judgment for a specific amount. . . ." (*Mortimer* v. *Loynes* (1946) 74 Cal.App.2d 160, 168 [168 P.2d 481]; see also *Ripling* v. *Superior Court* (1952) 112 Cal.App.2d 399, 402 [247 P.2d 117].)

The historical method of determining the right to jury trial is of no assistance to us here, since a cause of action for equitable indemnity did not exist when the Constitution was adopted in 1850. Prior to 1957, California law, embodying the old saw that "the law will not aid a wrongdoer,"

followed the common law rule denying a tortfeasor any right to contribution or indemnification.[3] (See, e.g., *Dow* v. *Sunset Tel. & Tel. Co.* (1912) 162 Cal.136 [121 P. 379].) However, this rule proved harsh in its application to particular factual circumstances. As Chief Justice Gibson observed in *Peters* v. *City & County of San Francisco* (1953) 41 Cal.2d 419, 431 [260 P.2d 55]: "[T]he rule against contribution between joint tort-feasors admits of some exceptions, and a right of indemnification may arise as a result of contract or equitable considerations and is not restricted to situations involving a wholly vicarious liability, such as where a master has paid a judgment for damages resulting from the voluntary act of his servant." In 1957, the Legislature established a statutory right to contribution. The doctrine of equitable indemnity was first applied by a California court shortly thereafter, in *City & County of S.F.* v. *Ho Sing* (1958) 51 Cal.2d 127 [330 P.2d 802]. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 592.)

Because the doctrine of equitable indemnity is of modern vintage, we must examine its "gist" to determine whether it gives rise to a legal or an equitable action. No California case has directly considered this issue. While no reported California decision has held that parties to an equitable indemnity action are entitled to trial by jury, the appellate courts have consistently upheld jury verdicts in such cases. (See, e.g., *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578; *Safeway Stores, Inc.* v. *Nest-Kart, supra,* 21 Cal.3d 322; *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656 [93 Cal.Rptr. 376]; *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital.* (1994) 8 Cal.4th 100 [32 Cal.Rptr.2d 263, 876 P.2d 1062]; *Gross* v. *Allen* (1994) 22 Cal.App.4th 354 [27 Cal.Rptr.2d 429]; *Blecker* v. *Wolbart* (1985) 167 Cal.App.3d 1195 [213 Cal.Rptr. 781]; *Bracket* v. *State of California* (1986) 180 Cal.App.3d 1171 [226 Cal.Rptr. 1].) Conversely, we are aware of no California cases which question the right to a jury trial in equitable indemnity actions.

The form of relief sought in the complaint, although not wholly determinative, is a reliable indicator of the "gist" of the action. Thus, "Actions at law *usually* seek a money judgment for damages, while equitable actions seek some form of specific relief and equity decrees are *usually* in

---

[3]The ostensibly mutually exclusive" doctrines of contribution and indemnification have been explained by the Supreme Court thus: "In traditional terms, the apportionment of loss between multiple tortfeasors has been thought to present a question of contribution; indemnity, by contrast, has traditionally been viewed as concerned solely with whether a loss should be entirely shifted from one tortfeasor to another, rather than whether the loss should be shared between the two. . . ." (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at p. 591, citation omitted.) As the court further explained, "the dichotomy between the two concepts is more formalistic than substantive, . . . the common goal of both doctrines [being] the equitable distribution of loss among multiple tortfeasors . . . ." (*Ibid.*)

personam." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 77, p. 105, italics in original.) The extraordinary powers of equity authorize courts sitting in equity to provide extraordinary relief. An equity court may, for example, order specific performance of a contract, enjoin the defendant from engaging in certain activities, partition real property, or impose a constructive trust on the defendant's assets, all powers beyond the jurisdiction of courts of law. Perhaps the most basic rule governing equity jurisdiction is that ". . . there is no right to equitable relief or an equitable remedy when there is an *adequate remedy at law*." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 3, p. 681, italics in original.)

 Here, respondents' complaint against the county sought two principal forms of relief: A declaration that respondents were entitled "to indemnification or proportionate contributory indemnification," and, "in the event of a judgment or verdict rendered against [respondents] by virtue of the Complaint of [the MacIntyres], that [respondents] have judgment against cross-defendants, and each of them, for the full amount of such judgment or in the alternative for such percentage of that judgment as it is corresponding to the duties of [the county] . . . , placed upon them through the application of the doctrine of proportionate contributory indemnification." Thus, respondents' cross-complaint sought declaratory relief (an equitable remedy) and money damages (a legal remedy) against the county.

As previously noted, we are aware of no California cases addressing this issue. Several courts in other jurisdictions have considered the issue before us. However, the cases cited by respondents, which include little or no analysis, are not particularly helpful. (See *Loyola Fed. Sav. Bank* v. *Thomasson Prop.* (1995) 318 S.C. 92 [456 S.E.2d 423]; *Brock* v. *Group Legal Administrators, Inc.* (S.D.N.Y. 1989) 702 F.Supp. 475; *Nat. Indem. Co.* v. *Mut. Service Cas. Co.* (Minn. 1981) 311 N.W.2d 856; *Midwest Fertilizer* v. *Ag-Chem Equipment* (Ind. 1987) 510 N.E.2d 232.) These cases simply conclude that because a cause of action for equitable indemnity is "equitable in nature," there is no right to a jury trial.[4] As we have seen, however, the fact that equitable principles apply to a particular cause of action does not by itself compel the conclusion that the cause of action is one in equity.

In *Palmer* v. *United States* (9th Cir. 1981) 652 F.2d 893 (overruled on another point in *White* v. *McGinnis* (9th Cir. 1990) 903 F.2d 699, 703), the

---

[4]For instance, the entire analysis in *Nat. Indem. Co.* v. *Mut. Service Cas. Co.*, *supra*, 311 N.W.2d 856, consists of the following: "National Indemnity . . . argues that constitutionally it is entitled to a jury trial on the indemnity claim. Article 1, section 4 of the Minnesota Constitution guarantees the right to a jury trial in 'all cases at law.' It is well-established that indemnity is an equitable remedy. It is equally clear that there is no right to a jury trial on equitable claims." (*Id.* at p. 858.)

Ninth Circuit Court of Appeals recognized the right to a jury trial in equitable indemnity actions. In *Palmer*, the federal government was the defendant in a personal injury action arising from an automobile accident. The court applied California law through the Federal Tort Claims Act, 28 United States Code section 1346(b). The government impleaded a third party under an equitable indemnity cross-complaint. The court apportioned liability under the California doctrine of comparative negligence without a jury trial. The government argued that the claim for partial comparative indemnity derived from the doctrine of contribution, an equitable doctrine, citing *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578. The district court agreed. The cross-defendant argued that the trial court erred in denying him his Seventh Amendment right to a jury trial.

The Ninth Circuit Court of Appeals determined that under the Seventh Amendment, an issue is "legal" so as to create a right to jury trial when its resolution involves the ascertainment and determination of legal rights, or justifies a remedy traditionally granted by common law courts. The court stated: "Here, the government's claim against [cross-defendant Fisher] requires a determination of the extent to which Fisher's negligence contributed to Palmer's injuries, the relative fault between Fisher and the government, and whether the government has in fact satisfied the judgment rendered against it in Palmer's original negligence suit. Each of these issues involves determinations of rights and liabilities traditionally arising in common law suits for negligence. Moreover, the government seeks to recover from Fisher a portion of the damages which it was required to pay to Palmer. Recovery of damages is a remedy traditionally granted by common law courts." (*Palmer* v. *United States, supra,* 652 F.2d at pp. 895-896.)

We believe that the foregoing analysis properly resolves the issue. Here, respondents' claim against the county requires a determination of the extent to which the county's actions in response to notice of the dangerous condition of a public road contributed to the MacIntyres' damages for the wrongful death of their loved one, and the relative fault of the respondents and the county. "Each of these issues involves determinations of rights and liabilities traditionally arising in common law suits for negligence" (*Palmer* v. *United States, supra,* 652 F.2d at pp. 895-896) or, in this case, for public entity liability. Moreover, the remedy which respondents seek is money damages, a remedy traditionally granted by common law courts. Because respondents have recourse to an adequate remedy at law, they have no need to seek equitable relief. That is to say, "None of the extraordinary powers of a court of equity are required in order to give [respondents] the relief that [they] seek[]. A court of law can afford complete relief." (*Mortimer* v. *Loynes, supra,* 74 Cal.App.2d at p. 168; see also *Ripling* v. *Superior Court, supra,*

112 Cal.App.2d at p. 402.) Consequently, we conclude that a cause of action for equitable indemnity is a legal action seeking legal relief. As such, the county was entitled to a jury trial.

Moreover, we reject respondents' contention that the county waived its right to a jury trial, and that the trial court's denial of that right is not reversible error.

Code of Civil Procedure section 631, subdivision (c), on which respondents rely for their argument of waiver, states: "When the party who has demanded trial by jury . . . waives such trial . . . after the commencement of the trial, . . . trial by jury shall be waived by the other party . . . failing promptly to demand trial by jury before the judge in whose department the waiver . . . was made, . . ." Here, when respondents waived their right to trial by jury over two months into the trial, the county and the state unequivocally objected, arguing that they had a constitutional right to have a jury hear the equitable indemnity claim. There is no waiver on this record.

Equally unpersuasive is the suggestion that the error was harmless. ▮ The denial of the right to jury trial is reversible error per se. (*Golden West Baseball Co.* v. *City of Anaheim* (1994) 25 Cal.App.4th 11, 50 [31 Cal.Rptr.2d 378]; *Van de Kamp* v. *Bank of America* (1988) 204 Cal.App.3d 819, 862-863 [251 Cal.Rptr. 530].) No showing of actual prejudice is required.

The cases cited by respondents holding that actual prejudice must be shown involve situations where a trial court has denied a party relief from its prior waiver of a jury trial and, rather than seeking a writ of mandate to correct the trial court's abuse of discretion, the party seeks reversal of the judgment on appeal. (*McIntosh* v. *Bowman* (1984) 151 Cal.App.3d 357 [198 Cal.Rptr. 533]; *Gann* v. *Williams Brothers. Realty, Inc.* (1991) 231 Cal.App.3d 1698 [283 Cal.Rptr. 128].) Whatever the merits of these cases on their facts, they have no application here, where the trial court did not abuse its discretion in refusing to permit the county to withdraw its prior waiver of a jury trial, but denied the county its constitutional right to such a trial in the first instance.[5]

---

[5]Of course, if the county had had the burden of showing actual prejudice, it would have easily met that burden here. The factual basis of respondents' argument is directly counter to the record in this case. While appellate courts often conclude that it is not reasonably probable that a different result would have been reached in the absence of a given error, we clearly could not so conclude here, where a jury in fact reached a different and, as to the county, a more favorable result.

## 2. *Collateral estoppel effect of jury verdict in wrongful death action*

■ The county contends that if this court finds that the county is liable to the MacIntyres in their wrongful death action, then the jury's allocation of 13 percent fault on the part of the county should be determinative of the equitable indemnity claim. Respondents answer that principles of collateral estoppel do not apply in this case for three reasons: First, there is no final judgment in the wrongful death action. Second, the jury made no finding concerning comparative fault. And lastly, respondents were not in privity with the MacIntyres in that action. We are not persuaded by these arguments.

First, we disagree that the jury's determination of comparative fault in the wrongful death action should not be enforced because it is not final. The judgment in *MacIntyre* v. *County of Los Angeles, supra*, B080699, will become final when the appeal process is completed. Application of collateral estoppel principles in analogous circumstances has long been sanctioned in California. (See, e.g., *Busick* v. *Workmen's Com. Appeals Bd.* (1972) 7 Cal.3d 967 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Aronow* v. *LaCroix* (1990) 219 Cal.App.3d 1039 [268 Cal.Rptr. 866]; *First N.B.S. Corp.* v. *Gabrielsen* (1986) 179 Cal.App.3d 1189 [225 Cal.Rptr. 254]; *Baughman* v. *State Farm Mut. Auto. Ins. Co.* (1973) 148 Cal.App.3d 621 [196 Cal.Rptr. 35].) And we cannot help but note that if respondents had not advanced a misguided legal argument and withdrawn their equitable indemnity claim from the jury at the eleventh hour, we would not be discussing whether the jury verdict is binding.

Second, the jury clearly did make a finding regarding the comparative fault of the persons responsible for Christine MacIntyre's death. Special verdict question No. 12 read as follows: "Assuming that 100% represents the total causes of the plaintiffs['] damages, what percentage of this 100% is due to the actions or omissions of the County of Los Angeles, and/or the State of California, and all other persons?" The verdict form contained the following names, next to which were blanks for the jury to insert a percentage of fault figure: the county, the state, Bourget, Martin, Roy Kinslow, Lucio Gonzales, Miguel Macario, Alexander Sharpe, Western Brake, and other persons. The jury apportioned "cause" among these various individuals and entities, as follows: the county: 13 percent; the state: 0 percent; Bourget: 39 percent; Martin: 48 percent; and all others: 0 percent.

Respondents argue: "With respect to the finding of the jury in response to question twelve, it was, by its express language[,] a finding concerning *causation* of . . . damages, not *comparative fault*. In an action for partial

equitable indemnification, however, indemnity is awarded based upon *comparative fault, not causation per se.* [Citations.] Hence the determination of the Court in the cross-action that the County should bear fifty percent of the liability is not inconsistent with the finding of the jury that the conduct of the County *caused* thirteen percent of the damages suffered by the MacIntyres."

Respondents are correct that the special verdict question was phrased in terms of "causation" rather than of "fault." However, they ignore the fact that the jury was instructed in the law of negligence and of comparative fault, both of which doctrines applied only to the equitable indemnity cross-complaint. Thus, the trial court instructed: "In order to determine the proportionate share of the total fault attributable to the various other persons, you will of necessity be required to evaluate the combined responsibility of the defendants and of all other persons which contributed to the plaintiff's loss. [¶] In comparing the fault of such persons, you should consider all of the surrounding circumstances as shown by the evidence." Clearly, the jury was asked to, and did, render a decision regarding the comparative fault of respondents, the county, and others.

Respondents' statement to the contrary notwithstanding, we find irreconcilable the jury finding of 13 percent "cause" and the trial court's finding of 50 percent "fault." As we explained in our opinion in *MacIntyre* v. *County of Los Angeles, supra,* B080699, the jury found the county liable for the MacIntyres' damages due to the dangerous condition of public property as provided in Government Code section 835, subdivision (b). Respondents fail to explain how the county could be 13 percent liable for the MacIntyres' damages, but not 13 percent "at fault" for purposes of equitable indemnity.

Finally, respondents maintain that they were not in privity with the MacIntyres, and thus cannot be bound by the jury finding in the wrongful death action.

■ The term "privity" refers to some relationship or connection with the party which makes it proper to hold "privies" bound with the actual parties. " 'Who are privies requires careful examination into the circumstances of each case as it arises.' " (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73], questioned on another point in *Self* v. *Self* (1962) 58 Cal.2d 683 [26 Cal.Rptr. 97, 376 P.2d 65].) The courts have abandoned application of rigid categories in favor of a practical approach which addresses the question of "whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." (*People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773].)

■ Here, respondents were named defendants in the wrongful death litigation. They remained parties to the litigation by reason of their cross-complaint against the county and the state, even after being dismissed as

defendants in the underlying action. Respondents' counsel fully participated in the wrongful death trial from its commencement in May until, on the eve of submission of the case to the jury, he waived his clients' right to a jury trial some two months later. Respondents' lawyer cross-examined witnesses, submitted proposed jury instructions, argued the merits of various of the court's rulings, and sat at counsel table even after he had withdrawn the cross-complaint from the jury. At the time of trial, the interests of the MacIntyres and respondents were closely aligned: They both sought to paint the county as the most culpable party, the MacIntyres in order to obtain a damage award in excess of the sums they received in settlement from respondents, and respondents in order to recoup from the county as much of the settlement payment as possible. As but a single illustration of the community of interest between the MacIntyres and respondents, it is telling that the MacIntyres' attorney, Mr. Cicconi, assisted in preparing respondent Martin for cross-examination by the county.

The Supreme Court considered the issue of privity in *Clemmer* v. *Hartford Ins. Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], where it noted, "[I]n deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation." (*Id.* at p. 875.) Here, two of the three rationales for application of the principle are present: The need to minimize repetitive litigation, and to prevent inconsistent judgments. Where, as here, respondents had every opportunity to personally litigate the issue of comparative fault in the wrongful death action, and in fact participated in that action in concert with the MacIntyres, principles of judicial economy and fairness to all of the involved parties mandate that the jury finding regarding the county's percentage of fault for the MacIntyre accident be accorded collateral estoppel effect.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. The county is to recover its costs of appeal.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied January 13, 1997, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 16, 1997.