Filed 8/21/14

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBORAH SHAW, | B254958 |
| Petitioner, | |
| | (Los Angeles County Super. Ct. No. BC493928) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THC–ORANGE COUNTY, INC. etc., et al. | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Alan S. Rosenfield, Judge. Petition granted.

Shegerian & Associates, Inc. and Carney R. Shegerian for Petitioner.

No appearance for Respondents.

Shaw Valenza, D. Gregory Valenza and Jasmine L. Anderson for Real Parties in Interest.

Health and Safety Code section 1278.5 prohibits a health facility from retaliating against any of its employees for complaining about the quality of care or services provided by the facility. The statute further provides that an employee who has been improperly retaliated against "shall be entitled to reinstatement, reimbursement for lost wages and work benefits caused by the acts of the employer, and the legal costs associated with pursuing the case, or to any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law." (Health & Saf. Code, § 1278.5, subd. (g).) The question presented by the instant writ petition is whether a former employee of a health facility, alleging improper retaliation, has a right to a jury trial for her action seeking money damages under this statute. We conclude that she does, and therefore grant the employee's petition for writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Deborah Shaw brought suit against her former employers, THC – Orange County, Inc. dba Kindred Hospital – Los Angeles,[1] Kindred Healthcare Operating, Inc.; Kindred Hospitals West, LLC; and Kindred Healthcare, Inc. (collectively, Kindred).[2] The operative complaint is the first amended complaint. Shaw alleges that, during her employment, she complained to defendants about conditions of the facilities that affected the quality of care and services provided. Specifically, Shaw

---

[1] This defendant was named in Shaw's complaint as THC – Orange County, Inc. In its answer, it asserted that THC – Orange County, Inc. dba Kindred Hospital – Los Angeles was its correct name.

[2] Shaw also named an individual defendant, Jeffrey Sopko. The record indicates that he was dismissed on demurrer.

2

complained that Kindred "was employing as health care professionals individuals that were not licensed and or certified. [Shaw] also complained to [Kindred] that [Kindred] employed health care professionals who had not properly completed their competencies." In alleged retaliation for Shaw's complaints, Kindred took adverse employment actions against Shaw, including her ultimate termination.

Shaw's complaint pleaded two causes of action, one for violation of Health and Safety Code section 1278.5 and one for wrongful termination in violation of public policy. With respect to her cause of action under Health and Safety Code section 1278.5,[3] Shaw alleged that she has suffered "past and future monetary los[s]es, loss of benefits, emotional damages, and physical injury." Shaw sought the following relief: compensatory and emotional distress damages; lost salary (front and back pay, bonuses, and benefits); punitive damages; prejudgment interest; attorney fees; statutory civil penalties; and costs. Shaw did not seek reinstatement.

Kindred answered and the case ultimately proceeded to trial. Immediately prior to trial, the court requested briefing on Shaw's right to a jury trial under Health and Safety Code section 1278.5.[4] Shaw took the position that she was entitled to a jury trial

---

[3]     The trial court concluded that Shaw was entitled to a jury trial on her cause of action for wrongful termination in violation of public policy. The parties do not contest that ruling; the only issue before us is whether Shaw is entitled to a jury trial on her cause of action for violation of Health and Safety Code section 1278.5. As a result, we focus the remainder of our discussion solely on that cause of action.

[4]     On March 4, 2014, the case was transferred to a new judge for trial. It appears that, on March 5, 2014, the court asked the parties to brief the issue of whether Shaw was entitled to a jury trial. Briefs were filed the next day.

3

because the statute provided for lost wages and attorney fees,[5] both of which were legal remedies.  Kindred took the position that a claim for reimbursement of lost wages is a claim for restitution, which sounds in equity.

A hearing was held.  The parties discussed each phrase in the statute providing for a remedy, and argued over whether the statute provided for legal, as opposed to equitable, relief.  As we shall discuss, we find the statutory language providing for "any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law" to be key to the resolution of this issue.  At the hearing, the court noted that this language delegates the selection of a remedy to the court, and also concluded that the language was so broad that it was not appropriate for a jury to make the determination.[6]

---

[5]    At the hearing on Shaw's entitlement to a jury trial, the trial court concluded that whether the statute did, in fact, provide for attorney fees was an issue that was not relevant to the issue of whether the cause of action would proceed before a jury.  The court reasoned that if attorney fees were recoverable, they would be recovered post-trial as costs.  Shaw apparently agreed; in her writ petition, she does not in any way base her argument for a jury trial on any purported right to obtain attorney fees.  Nonetheless, Kindred's return appears to address the issue of whether attorney fees are recoverable in an action under Health and Safety Code section 1278.5.  We agree with the trial court; whether the statute provides for attorney fees has no impact on whether Shaw is entitled to a jury trial.  The issue of attorney fees is simply not relevant to the issue before us.

[6]    Kindred agreed with the court, arguing that this provision "is a typical equity provision because equity allows the Court to fashion almost any remedy that will fulfill the purposes of equity."

4

The court concluded that the statutory cause of action was purely equitable, and therefore denied Shaw's request for a jury trial.[7] The court stayed the matter for five days to enable Shaw to file a petition for writ of mandate. The court further certified, pursuant to Code of Civil Procedure section 166.1, that it believed " 'that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation.' "

Shaw filed a petition for writ of mandate challenging the denial of a jury trial. We issued an order to show cause. Kindred filed a return and a demurrer, in which it argued that the matter was not appropriate for writ relief. We now grant Shaw's petition.

## ISSUES PRESENTED

First, we consider Kindred's demurrer to the petition, and conclude that the denial of a jury trial in this case is a proper matter for writ relief. Second, we turn to the merits and consider whether Health and Safety Code section 1278.5 provides for a jury trial. We conclude that the statutory language and legislative history of the statute reflect an intent to permit a jury trial. Moreover, even apart from this evidence of legislative intent, we conclude that a jury trial is appropriate as the gist of Shaw's cause of action sounds in law rather than equity.

---

[7] The court ruled that it would hear the statutory cause of action concurrently with the jury trial on the cause of action for wrongful termination in violation of public policy.

5

## DISCUSSION

1.   *Writ Relief Is Appropriate*

Relying on *Nessbit v. Superior Court* (1931) 214 Cal. 1 (*Nessbit*), Kindred argues that the denial of a jury trial is an inappropriate matter for writ relief. In *Nessbit*, the California Supreme Court stated, "This court and the District Court of Appeal have squarely held in numerous civil and criminal actions and proceedings not amounting to a felony that mandate is not the proper remedy to test the right to a jury trial. That is a question of law which the superior court has jurisdiction to hear and determine, and if error has been or shall be committed in determining that question, the petitioner has a sufficient remedy in the ordinary course of law by appeal." (*Id.* at p. 7.)

Although *Nessbit* has not been reversed, subsequent appellate authority has taken an apparently contrary position. In *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 (*Byram*), the Third District Court of Appeal held, "A writ of mandate is a proper remedy to secure the right to a jury trial. [Citation.] . . . [E]ven if [the appellant] could [obtain] reversal of the judgment [after a bench trial], such a procedure would be inefficient and time consuming."

Kindred acknowledges that *Byram* appears to conflict with *Nessbit*, and argues that, as an intermediate appellate court, we are bound to follow the Supreme Court's decision in *Nessbit*. However, we conclude that the opinions can be harmonized. *Nessbit* acknowledged that mandate is appropriate when there is no plain, speedy, or adequate remedy in the ordinary course of law. (*Nessbit, supra,* 214 Cal. at p. 9.) The Supreme Court further noted that it had "frequently exercised this power in cases in

6

which matters of great public interest are involved and in cases in which great and irreparable injury would result if the case was relegated to the ordinary course provided by law." (*Ibid.*) It concluded, however, that the case before it was not such a case. It did not conclude that *no case* in which a jury trial was denied would ever be appropriate for writ review.

We conclude that the instant case is appropriate for writ review. We are concerned not with a routine application of established law to the facts of a particular case, but with a novel question of statutory interpretation, which is a matter of interest to all plaintiffs who may bring suit under Health and Safety Code section 1278.5. Moreover, the trial court certified that immediate resolution of the question "may materially advance the conclusion of the litigation." We therefore overrule Kindred's demurrer to the writ petition, and proceed to resolve the petition on its merits.

2.      *The Right to a Jury Trial*

Most cases involving a party's assertion of a right to a jury trial are based on the guarantee of a jury trial as set forth in article I, section 16 of the California Constitution. However, sometimes it is asserted that a statute grants the parties the right to a jury trial on claims asserted pursuant to that statute. In this case, we first consider the statute, then turn to the constitutional grant.

a.      *The Language and Legislative History of Health and Safety Code Section 1278.5*

"Our duty, where a claim is made that a statute grants the right to a jury trial, is to determine the legislative intent so as to effectuate the purpose of the statute.

7

[Citation.]" (*Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45, 56, superseded by statute on another ground.) We look at both the statutory language and the legislative history. (*Ibid.*)

Health and Safety Code section 1278.5 provides protection for health care whistleblowers. Subdivision (a) of that section explains: "The Legislature finds and declares that it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions. The Legislature encourages this reporting in order to protect patients and in order to assist those accreditation and government entities charged with ensuring that health care is safe. The Legislature finds and declares that whistleblower protections apply primarily to issues relating to the care, services, and conditions of a facility and are not intended to conflict with existing provisions in state and federal law relating to employee and employer relations." The statute goes on to provide that "[n]o health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person" has done any protected act, including complaining to the facility regarding the quality of care, services or conditions at the facility. (Health & Saf. Code, § 1278.5, subd. (b)(1).) The statute provides for a civil penalty, to be recovered administratively.[8] (Health & Saf. Code, § 1278.5, subd. (b)(3).)

---

[8]    It further provides that a willful violation is a misdemeanor, punishable by a fine. (Health & Saf. Code, § 1278.5, subd. (f).)

In addition, the statute provides for a civil action by a wronged employee, health care worker, or member of the medical staff. As to an employee, the statute provides: "An employee who has been discriminated against in employment pursuant to this section shall be entitled to reinstatement, reimbursement for lost wages and work benefits caused by the acts of the employer, and the legal costs associated with pursuing the case, or to any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law."[9] (Health & Saf. Code, § 1278.5, subd. (g).)

We must determine whether the legislature's intent in enacting this language was to provide for a jury trial. If the language provided only for "reinstatement, reimbursement for lost wages and work benefits caused by the acts of the employer, and the legal costs associated with pursuing the case," an argument could be made that these remedies were only equitable, and did not provide a jury trial right. (See, e.g., *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [reinstatement with back pay is a wholly equitable remedy].) But the statutory language goes on to provide for "any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law." Kindred asks us to interpret this phrase as a simple codification of the principle that a court sitting in equity has the power to provide extraordinary relief. (*Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 696.) Yet the statutory language goes beyond equitable

___

[9]     Similar, but not identical, relief is provided for wronged health care workers and members of the medical staff. (Health & Saf. Code, § 1278.5, subd. (g).)

powers, allowing the court to provide any remedy under any "applicable provision of statutory or common law." Statutory remedies are not equitable; many, if not all, common law remedies are also not equitable.[10] Thus, the statutory language allows for legal as well as equitable remedies, giving rise to the inference that a jury trial was contemplated by the legislature.[11]

The legislative history confirms this interpretation of the statutory language. When Government Code section 1278.5 was originally enacted, in 1999, the "or to any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law" language was not present. Instead, former subdivision (g) provided only: "An employee who has been discriminated against in employment pursuant to this section shall be entitled to reinstatement, reimbursement for lost wages and work benefits caused by the acts of the employer, and the legal costs associated with pursuing the case." As noted above, these remedies appear to be equitable only. The language expanding the remedies was added by a 2007 amendment to the statute. (Stats. 2007, ch. 683, § 1.)

---

[10] Black's Law Dictionary (9th ed. 2009) provides multiple definitions of the term "common law." While the term may mean "[t]he body of law derived from judicial decisions, rather than from statutes or constitutions," it can also mean, in reference to American common law, "[t]he body of law deriving from law courts as opposed to those sitting in equity."

[11] The trial court had reasoned that, since the statutory language provides that the remedy is to be chosen "by the court," this is not a determination left to a jury. The result does not follow. The court is to select the appropriate remedy, but if the remedy is legal rather than equitable, the court should properly instruct the jury on the factual determinations the jury must make in order to award that remedy.

10

As originally proposed, the 2007 amendment did not broaden the remedies. (Assem. Bill No. 632 (2007-2008 Reg. Sess.) § 1, as introduced.) Prior to the 2007 amendment, the statute protected only employees of health facilities, not health care workers and members of the facilities' medical staffs (physicians). The initial purpose of the 2007 amendment was to extend the statute's protection to health care workers and members of the medical staffs, who might not be employees of the health facilities. The question arose as to whether extending the protections to those categories of individuals required extending the remedies. A bill analysis prepared by the Senate Judiciary Committee raised the question in the following language: "Current 1278.5 in fact enumerates various remedies for an employee who has been discriminated or retaliated against: reinstatement, reimbursement for lost wages and work benefits caused by the employer's actions, and legal costs associated with pursuing the whistleblower's case under the statute. Because the physician and medical staff are most likely not employees of a hospital, the remedies available to them could be entirely different, depending on the retaliatory action that was taken. [¶] According to the [California Medical Association], examples of actions a hospital can take to suppress physician-whistleblowers or to retaliate against them are: (1) underwriting the salary and/or practice expenses of a competing physician; (2) establishing a medical care foundation and supporting its physicians with hospital funds; (3) recruiting competing physicians to the community in the absence of a community deficit for that specialty; (4) establishing a medical practice administrative service company for selected physicians and charging below market rates so that the doctor keeps a higher percentage

11

of the collections and gains a competitive advantage; (5) buying the medical building with the physician's office and refusing to renew the physician's lease; (6) inducing primary care physicians to refer patients to the hospital outpatient facility for tests, bypassing the specialist's office-based testing (e.g., imaging and cardiac tests); (7) providing special scheduling priorities for hospital facilities; (8) underwriting certain physicians and empowering them with control or influence over the peer review process; (9) developing investment partnerships with selected physicians (surgery center, MRI center) that provide lucrative annual returns on investment (e.g., 50% return on investment (ROI) annually); and (10) providing special equipment leasing arrangements for selected physicians with above market ROI.  [¶]  AB 632 however would provide only the following remedies to a physician who was discriminated or retaliated against:  reinstatement (of privileges?), reimbursement for lost income resulting from any change in the terms o[r] conditions of his or her privileges caused by the health facility's acts or acts of any other facility owned or operated by the entity, and the legal costs of pursuing the case.  [¶]  It would seem that none of these remedies would give adequate redress to a physician who suffered any of the retaliatory acts named above.  [¶]  SHOULD THERE BE A CATCH-ALL PROVISION FOR A COURT TO FASHION WHATEVER REMEDY WOULD FIT THE RETALIATORY ACT?"  (Sen. Com. on Judiciary, Analysis of Assem. Bill 632 (2007-2008 Reg. Sess.) as amended June 6, 2007, pp. 8-9.)  The analysis further questioned whether the bill should be amended to provide similar additional remedies for other health care workers as well.  (*Id*. at p. 9.)

Such language was, in fact, added to the bill in a July 17, 2007 amendment. This language provided that a wronged employee was entitled to "any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law."[12] (Assem. Bill No. 632 (2007-2008 Reg. Sess.) § 1, as amended July 17, 2007.) A subsequent bill analysis explained that this amendment "[s]pecif[ies] that, for damages to any employee, health care worker, or member of the medical staff who has been discriminated or retaliated against, he or she is entitled to any remedy deemed warranted by the court in lieu of reinstatement, reimbursement for lost wages and work benefits, and legal costs." (Bill Analysis, Concurrence in Senate Amendments on Assem. Bill 632 (2007-2008 Reg. Sess.) as amended September 5, 2007, p. 1.)

It is apparent, from this legislative history, that the language at issue was added to Health and Safety Code section 1278.5 to greatly broaden the scope of the remedies available to wronged employees, health care workers, and medical staff members. It can be inferred that the legislature intended to give courts the discretion to fashion remedies for all of the methods of retaliation raised by the California Medical Association and discussed in the Senate Judiciary Committee's bill analysis. While some of the methods of retaliation might be resolved with equitable remedies (e.g., if the health facility buys the medical building with the physician's office and refuses to renew the physician's lease, an order directing the health facility to renew the lease may

---

[12]     That same phrase was also added to the language of the bill discussing the remedies available to wronged health care workers and members of the medical staff.

13

be an appropriate remedy), other methods of retaliation involve undermining the physician's practice by underwriting competitors, and can only be remedied by an award of monetary damages. Indeed, it is impossible to look at the wide range of methods of retaliation discussed in the Senate Judiciary Committee's bill analysis and conclude that the legislature *did not* intend to grant courts the discretion to award remedies at law.

In short, the statutory language and its legislative history greatly expanded the remedies available under Health and Safety Code section 1278.5, subdivision (g), from equitable remedies to remedies available in law and equity. As such, the statute provides for a jury trial on legal issues.[13]

> b. *The Historical Analysis and Remedy Sought*

Our result is confirmed by an analysis under the constitutional right to a jury trial. " 'The California Constitution guarantees the right to a jury trial in a civil action at law.' [Citation.] Pursuant to article I, section 16 of the California Constitution, trial by jury is ' "an inviolate right," ' ' "a basic and fundamental part of our system of jurisprudence. . . . As such, it should be zealously guarded by the courts . . . . In case of doubt therefore, the issue should be resolved in favor of preserving a litigant's right to

---

[13] "Where a 'mixed bag' of legal and equitable claims is presented in a case, a court trial of the equitable claims first may obviate the necessity of a jury trial on the legal claims, but otherwise the plaintiff cannot be denied the right to a jury trial on the legal causes of action. [Citations.] If 'there are equitable and legal remedies sought in the same action, the parties are entitled to have a jury determine the legal issues unless the trial court's initial determination of the equitable issues is also dispositive of the legal issues, leaving nothing to be tried by a jury.' [Citation.]" (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 185.)

14

trial by jury." [Citation.]' [Citations.]" (*DiPirro v. Bondo Corp., supra,* 153 Cal.App.4th at p. 176.)

" 'The right to a jury trial is guaranteed by our Constitution. [Citation.] We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, "and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact." [Citations.] As a general proposition, "[T]he jury trial is a matter of right in a civil action at law, but not in equity." [Citations.]' " (*Martin v. County of Los Angeles, supra,* 51 Cal.App.4th at p. 694.)

" ' " ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." [Citation.]' [Citations.]" (*DiPirro v. Bondo Corp., supra,* 153 Cal.App.4th at p. 179.)

"The form of relief sought in the complaint, although not wholly determinative, is a reliable indicator of the 'gist' of the action. Thus, 'Actions at law *usually* seek a money judgment for damages, while equitable actions seek some form of specific relief and equity decrees are *usually* in personam.' [Citation.] The extraordinary

15

powers of equity authorize courts sitting in equity to provide extraordinary relief. An equity court may, for example, order specific performance of a contract, enjoin the defendant from engaging in certain activities, partition real property, or impose a constructive trust on the defendant's assets, all powers beyond the jurisdiction of courts of law. Perhaps the most basic rule governing equity jurisdiction is that '. . . there is no right to equitable relief or an equitable remedy when there is an *adequate remedy at law*.' [Citation.]" (*Martin v. County of Los Angeles, supra,* 51 Cal.App.4th at pp. 695-696.)

The proper analysis, under the constitutional right to jury trial, begins not with the relief sought in the pleadings, but with the historical analysis. (*DiPirro v. Bondo Corp., supra,* 153 Cal.App.4th at p. 179.) The fact that a particular statute did not exist in 1850 does not mean that there is no right to a jury trial under that statute. " '[T]he right to a jury trial does not entirely depend upon the existence of a particular right of action in 1850. [Citation.] Rather, it exists when a current case is of the same "class" or "nature" as one which existed in 1850.' [Citations.] '[T]he fact that the particular statute or offense was not in existence when the Constitution was adopted is not determinative; if the same type or class' of action 'called for a jury trial, the right is carried over to the new statute.' [Citation.]" (*Ibid.*)

"The right to trial by jury is not inapplicable to causes of action based on statutes, but applies to actions enforcing statutory rights 'if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.' [Citation.] Where, as here, we are deciding if a jury trial is required and have been

16

presented with a statutory scheme that was not known at common law in 1850, as with any other action we look to the essence of the rights conferred and the relief sought—' "the 'gist of the action.' If the 'gist' is legal, as opposed to equitable, we have recognized a right to jury trial. [Citations.]" [Citation.]' [Citation.]" We thus first ' "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," ' and then ' "examine the remedy sought and determine whether it is legal or equitable in nature." ' [Citation.]" (*DiPirro v. Bondo Corp., supra,* 153 Cal.App.4th at p. 180.)

The parties agree that there was no statutory protection for health facility whistleblowers in 1850. We thus must consider the gist of the action brought, in order to determine whether it is of the same type of action which was heard at law, rather than equity, at that time.[14] The remedies sought are relevant to, but not necessarily determinative of, this analysis.

In this case, Shaw is not seeking reinstatement. Instead, because of Kindred's alleged statutory violation, Shaw allegedly suffered lost wages, emotional distress, and physical injuries, for which she seeks monetary compensation. The gist of Shaw's action is the statutory violation; although it could also be viewed as an action for breach

---

[14] Kindred compares Health and Safety Code section 1278.5 to other whistleblower statutes, in state and federal law, and considers the remedies available in actions under those statutes, in order to determine the gist of the action. As these statutes did not exist in 1850, they are simply irrelevant to our analysis. Moreover, none of the statutes on which Kindred relies has similar language to the remedial provision in Health and Safety Code section 1278.5 (compare Health & Saf. Code, § 1432; Lab. Code, § 132a; 42 U.S.C. § 2000e-3). They are therefore of no use in determining the intent of the legislature in enacting the language of Health and Safety Code section 1278.5.)

17

of a term implied (by statute) into her employment contract, or an action for damages for personal injury. At common law, each of these classes of actions was triable by jury. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2013) ¶ 2:89, p. 2-18 [damages for violation of a statute]; *id*. at ¶ 2:84, p. 2-17 [damages for breach of contract]; 7 Witkin, Cal. Proc. (5th ed. 2008) Trial, § 84, p. 111 [damages for personal injuries].) Thus, the historical analysis, including consideration of the remedy sought, confirms that Shaw's Health and Safety Code section 1278.5 cause of action is an action at law, rather than equity, for which she is entitled to a jury trial.

## DISPOSITION

Shaw's petition for writ of mandate is granted. Let a writ issue directing the trial court to vacate its order denying Shaw's request for a jury trial on her Health and Safety Code section 1278.5 cause of action, and to enter a new and different order granting the request. Shaw is to recover her costs in connection with this writ petition.

## CERTIFIED FOR PUBLICATION

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.